Homa, Appellant, *v.* Wilkes-Barre Transit
Corporation.

Argued November 17, 1958.   Before JONES, C. J.,
BELL, MUSMANNO, COHEN and BOK, JJ.

310

*Mitchell Jenkins,* with him *Murray Mackson,* and *Rosenn, Jenkins & Greenwald,* for appellants.

*James P. Harris,* with him *Harry B. Schooley,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 5, 1959:

Mrs. Helen Homa was injured when she slipped on an icy pavement at a point other than a regular car stop, deposited there by the operator of the bus on which she had been a passenger. She and her husband brought a suit in trespass against the Wilkes-Barre Transit Corporation, owner of the bus, but at the trial they were nonsuited. The court *en banc* affirmed the nonsuit and the plaintiff appealed.

A nonsuit is one of the most drastic procedures in the civil branch of the law, bringing, as it does, a lawsuit to an abrupt termination, and thus depriving the allegedly injured person of an opportunity to present his case before a fact-finding tribunal. But it is a very necessary measure in the courts because, where the evidence presented by the plaintiff, even if accepted as true, fails to establish a prima facie case, it would be a sheer waste of time and mockery of justice to allow a trial to go to a verdict which must later be reversed. However, before the curtain of nonsuit falls, the need for ending the litigation must be so clear that "minds of reasonable men cannot honestly differ" as to the justice of the termination. (*Zanko v. Semmel,* 379 Pa. 242).

There seems to be little or no doubt regarding the facts in the case before us, but reasonable minds can honestly differ as to the inferences arising from them. On February 26, 1956, Mrs. Homa boarded a Glen Lyons bus in Wilkes-Barre for the purpose of riding to the intersection of South Main and South Streets in that city. However, when the bus arrived at a point three to four car lengths away from her destination, the operator, because of traffic conditions, stopped the bus in the middle of the street, opened the door and told three passengers including the plaintiff to get off, addressing them with the words: "Go ahead." Mrs. Homa proceeded to step down to the pavement but her left foot, after touching the street, lost traction on the ice-encrusted surface, and she fell on her back, sustaining serious injuries.

In the case of *Gourlay v. Phila. R. T. Co.*, 100 Pa. Superior Ct. 419, 421, the plaintiff fell into a hole in the street not at a regular car stop. The Superior Court, in affirming a resulting verdict, said: "We are of opinion that the action of the defendant's employee in stopping the car and calling on those who intended to get off at the intersection of 52d Street and Lansdowne Avenue to alight at such a considerable distance from the lighted crossing and usual stopping place, apparently in order that the car might make up some of the time lost by the traffic jam or for some other purpose not disclosed by the evidence, imposed on him the duty of exercising care that the place so selected by him for the passengers to alight was a reasonably safe one . . . If, for his own purposes or the purposes of the company, or, at least, moved by no compelling reason, he of his own motion invited the passengers who desired to get off at 52nd Street and Lansdowne Avenue to alight at such a great distance from the usual well-lighted and safe stopping place for passengers, it

may be a question under all the circumstances whether he has performed his full duty in the premises if he directs such passengers to alight there without making some examination as to the condition of the street at that point. Had he done so he would have found the hole into which the plaintiff fell."

Had the bus operator in the case at bar made the slightest examination of the spot where he requested the plaintiff to alight, he would have seen the danger into which he was forcing her. From his elevated vantage point he had a better view of the landing site than the passengers. It is not apparent that there was any imperative need for him to discharge his passengers at this point of peril.

In the case of *Stevens v. Reading St. Railway Co.*, 384 Pa. 390, 394, this Court said: "The law is clear that a common carrier for hire owes a duty to its passengers not only to exercise the highest degree of care and diligence in carrying them to their destination, but also must exercise reasonable diligence to *give passengers a safe place to alight and pass out of danger.*" (Emphasis supplied)

In *Brown v. Beaver Valley Motor Coach Co.*, 365 Pa. 578, 581, the plaintiff was discharged some 200 feet short of the regular bus stop and, in the encircling darkness (it was 11:30 p.m.), he fell against a piece of pipe and into an open manhole. In affirming the judgment against the bus company this Court said: "The driver of the bus knew that plaintiff would have to reach the sidewalk. He also knew or should have known that at the place where he stopped the bus the mounds of earth and the unevenness of the ground would make this a hazardous venture. By discharging plaintiff in a place of obvious danger, the driver failed to exercise the degree of care which the law requires."

As recently as May, 1958, we affirmed the time honored rule that: " 'A common carrier for hire owes to its passengers the *highest degree of care* and diligence in carrying them to their destination and (in) *enabling them to alight safely*' . . . 'If for any cause the carrier makes its stop short of or *beyond the point where it knows the passenger desires to alight, it should give him notice of the fact before he attempts to leave the car, and a failure so to do is a violation of duty for which the carrier may be held responsible.'* " (*Coyne v. Pittsburgh Railways Co.*, 393 Pa; 326, 329.)

Did the motor bus operator here use the highest degree of care in discharging the plaintiff within a circle of icy hazard? Can we say as an indisputable legal proposition that he did all that was required under the circumstances? Was it not a question for the jury as to whether he met the obligations he owed for the safety of the customers of his company?

The appellant points out that hail and sleet had fallen all morning (the accident occurred about 1 p.m.) and this fact was known to everybody. But the state of the weather is not something which a person with a legal responsibility may wrap about him as a blanket of immunity from his own act of negligence. Weather is as much a part of a bus driver's concern as the equipment he operates and the path he traverses with that equipment. A driver who would continue to drive in the teeth of a gale or a snow storm which destroys visibility would be chargeable in law if, during the period of that meteorological blindness, he drove his bus into a wall or took it over an embankment.

The appellant says further that the hail and sleet made walking precarious throughout the city, and that this general state of affairs saved the transit company from specific liability for accidents due to falls on ice. But there is a difference between walking over

streets and pavements which may be sleety and slippery, but are open to full view, and descending from a bus where one's vision is limited and opportunity for testing conditions underfoot practically nil. Particularly is this so when the vehicle stops at a place other than the regular car stop and where, in consequence, there is always the possibility that the operator, impelled by traffic to get going, may start the vehicle before the passenger has become cleared of the steps, the doors, and metal work in and about the exit.

Even if it were proved that other streets were icy, this would not license a bus operator to fling away what precautions were left to avoid accidents. The fact that a condition is general is not of itself a general release from the duty to exercise care. Such a situation does not authorize a bus operator or motorman to force a passenger into unnecessary jeopardy of life and limb. If a flood had covered the streets of Wilkes-Barre to a depth of two or three feet, a bus operator could still be held guilty of negligence if he required a passenger to alight in the water; and it would be no waterproof excuse for him to say that there was water everywhere. In such a case, in the event of accident, the fact-finding tribunal would decide whether he had or had not exercised the due care required under the circumstances.

The appellant says: "If Mrs. Homa had left the bus at the usual stopping place, 70 feet farther up South Main Street, she would have encountered the same slippery condition. Her testimony was that 'the pavements were still slippery' all over the city, and in the face of this positive testimony there can be no inference that the pavement 70 feet from the place where Mrs. Homa fell was other than 'wet and slippery.'"

There was no burden on the plaintiff to show that if she had been discharged at the regular car stop she would not have fallen. The law does not require of a

plaintiff extrication from risks of a hypothetical character. Moreover, it is not certain by any means that if the transit company had done its duty and taken the bus to the regular car stop Mrs. Homa would have there encountered a similar difficulty. It could be that the state of affairs at the regular bus stop was much safer than the one obtaining 70 feet distant. It could well be that the ice at the regular bus stop had been cleared away or that the stopping place had been carpeted with non-skidding cinders. And then a bus is apt to linger longer at a regular stop than it does in the middle of the street, thus saving the passenger from the tension of hurrying off the bus and getting away quickly in order to avoid a possible sudden starting of the bus or a collision with other vehicles in the immediate vicinity.

Contrary to appellant's argument, the bus company was not called upon to defend against a general street condition in Wilkes-Barre. The question in this case is whether or not the operator was negligent in compelling the plaintiff to alight at an icy and slippery spot when, by traveling only 70 feet further, he could have left her off at a regular stop with its traditional safety features and in immediate proximity to a curb or sidewalk. Reasonable men could honestly differ as to whether he exercised the degree of care which, as a public carrier, he owed Mrs. Homa. And that is precisely the kind of a question which twelve men and women are more prepared to answer with less chance of slipping on a non sequitur than a single judge who, in studying the patina of the law covering a stepping off place, may overlook the slippery facts beneath, falling into the fracture of a nonsuit which this Court must cure, as we proceed to do here, by removing the judgment and applying a *venire facias de novo*.

Mr. Justice BELL dissents.

Mr. Justice BENJAMIN R. JONES took no part in the consideration or decision of this case.