MORRELL ET AL., APPELLANTS, *v.* LANE AVIATION CORP. ET AL., APPELLEES.

[Cite as Morrell v. Lane Aviation Corp. (1970), 22 Ohio App. 2d 57.]

58

(No. 9659—Decided April 21, 1970.)

*Mr. Robert R. Crane*, for appellants.
*Mr. Ted Earl* and *Mr. Dick M. Warburton*, for appellees.

STRAUSBAUGH, J. This is an appeal from a judgment of the Common Pleas Court of Franklin County, which was rendered after the court sustained a motion for a dismissal at the conclusion of plaintiffs' case. The judgment is affirmed.

Defendant-appellee Lane Aviation Corporation (afterwards referred to as Lane) was hired to transport the plaintiff's sick mother, a litter patient, by private plane from Columbus to her home in Philadelphia. The plaintiff Esther Morrell accompanied her mother in accordance with the desire of Lane. After landing, the pilot taxied to the terminal, passing the ambulance without seeing it; the plane returned, the plaintiff got out and the patient was removed into the ambulance. The pilot then said that he would meet the plaintiff and her brother in the terminal because he had to log his flight back and refuel. The plaintiff testified that: it was almost two blocks to the terminal; the surface was ice and snow covered; she held her brother's arm and had walked about 25 feet when she fell forward on her right hand, injuring her right hand and arm.

Appellants' single assignment of error is that the court erred in granting defendants' motion to dismiss at the conclusion of plaintiffs' case.

The appellees apparently do not deny the appellants' claim that "Defendant was a common carrier, charged with the highest degree of care." The appellees distinguish between the situation in which the plaintiff is injured while in the aircraft and when the plaintiff is at a point remote from the plane itself.

The appellants lay great stress on a case which they assert is controlling, *Homa v. Wilkes-Barre Transit Corp.* (1959), 394 Pa. 309, 147 A. 2d 377. There the action was against a bus company for injuries sustained by a passenger who slipped on icy pavement when she alighted from a bus which had stopped in the middle of the street at a place 70 feet from the regular bus stop during a hail and sleet storm. The court held that the evidence raised a jury question as to whether the bus driver exercised the due care required of him in so discharging the passenger. The fact situation in the case at bar is clearly distinguishable from that in the case just cited. First, a bus usually has a predetermined route over certain roads and streets with certain scheduled stops; the operation of the bus is within the control and direction of the driver. A plane, while driven by the pilot, is usually directed in flight by ground control. It has no prescribed landing spot but is usually directed, as in this case, by the control tower. The prime contract in the *Homa case* was to transport the plaintiff passenger to her destination, a prescribed bus stop.

In this case the prime purpose of the flight was to transport a sick patient to an ambulance at the airport in Philadelphia. The prescribed destination in this case was the spot where the patient and the plaintiff were discharged. In *Homa*, plaintiff was discharged during a hail and sleet storm. There were no such weather conditions in this case. In *Homa* the negligence charged against defendant was the actual forcing of plaintiff to alight and the fact that defendant, from his position, could see better than the plaintiff. Here the plaintiff had already alighted from the plane and was in the company of a relative. She could have departed from that spot with her mother in the ambulance. She certainly was free to walk with her brother to the ter-

minal building. She was free to request the pilot to taxi her closer to the terminal. There is no showing that the pilot, at that point, was any more familiar with the ground condition underfoot than was plaintiff. There is no showing that plaintiff was abandoned at a "point of peril." At that point of time and place there was no necessity for the protective wings of the common carrier's high degree of care to surround the plaintiff. Not only was there a failure to show that Lane had failed to stop at the point of destination, but there is no showing that the control tower would have permitted Lane to taxi any closer to the terminal than it then was where plaintiff alighted. Had plaintiff re-entered the plane or had plaintiff requested the pilot to taxi her to the terminal, perhaps a different question would have been presented; but those are not the facts.

We agree with the law cited by appellants in 3 A. L. R. 3d 940-941, as to "Fall at Airport—Carrier's Liability," wherein it is stated that "A carrier is not an insurer of the safety of its passengers but it owes to its passengers only the duty of exercising ordinary care for their protection while on their premises * * *." *Delta Air Lines* v. *Millirons* (1952), 87 Ga. App. 334, 73 S. E. 2d 598. "It was the duty of the defendant to furnish her with a reasonably safe passageway from the waiting room of the airport to the airplane she was to board * * *." *Crowell* v. *Eastern Air Lines* (1954), 240 N. C. 20, 81 S. E. 2d 178. "* * *the defendant carrier owed plaintiff a duty to use reasonable care under the circumstances complained of and that the defendant carrier, as a common carrier, 'owed to plaintiff the duty of exercising the highest degree of care,' * * * under New York law the duty to use 'highest care' does not extend to the maintenance of station facilities and means of ingress and egress." *Polara* v. *Trans World Airlines, Inc.* (1960), 284 F. 2d 34. Here we find no violation of Lane's duty to furnish plaintiff with a reasonably safe passageway to the terminal building and that Lane as a matter of law used reasonable care under the circumstances. Appellants argue at some length over the distance that plaintiff "had" to walk. There is no evidence

that plaintiff "had" to walk or was made to walk. She apparently chose to walk to the terminal on the arm and in the company of her brother. It is not inherently wrong for a person to walk even "a quarter-mile or more." Such distances are often walked by choice by many people either with or without the advice of their physician. Plaintiff's brother was not a passenger of Lane. Plaintiff knew, or should have known, that her brother had no choice after the ambulance departed but to walk to the terminal. She chose to walk with him. Would the plaintiff claim that the pilot had a duty to compel the plaintiff to re-enter the plane and ride alone while her brother walked to the terminal?

We agree with the reasoning and conclusion of the trial court that there was no negligence on the part of Lane, but that if there was negligence, then "Plaintiff was also negligent proximately contributing to her fall and injuries by choosing the route which was chosen to go from the plane to the building and from walking on the ice and snow which she has testified she knew was there." We also agree that plaintiff assumed the risk "by walking to the airport under those conditions and on that particular route." The judgment is affirmed.

*Judgment affirmed.*

TROOP, P. J., and STERN, J., concur.