Peter LEWIS, Plaintiff,

v.

**NATIONWIDE INSURANCE COMPANY, Defendant.**

Civ. No. 81–0350.

United States District Court,
M. D. Pennsylvania.

Jan. 22, 1982.

Joseph P. Coviello, Scranton, Pa., for plaintiff.

Cody H. Brooks, Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff Peter Lewis initiated this action on March 16, 1981 seeking a declaratory judgment, under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that he was a "victim" within the meaning of the Pennsylvania No-Fault Motor Vehicle Insurance Act [1] and, thus, was entitled to statutory benefits from Defendant, his automobile insurance carrier. Presently before the Court are cross-motions for summary judgment filed by each party. For the reasons set forth below, we will grant summary judgment in favor of the Defendant.

The material facts of this case are not in dispute.[2] On May 7, 1980, Plaintiff, a citizen of the State of Florida, was covered by a personal automobile insurance policy issued by Defendant,[3] which provided coverage in accordance with the provisions of the Pennsylvania No-Fault Act. On that date, Plaintiff was operating his vehicle on Route 407 in Benton Township, Pennsylvania. After travelling on this road for several minutes, another driver, Robert Price, proceeded to follow Plaintiff at a dangerous and unnecessarily close distance. After unsuccessful attempts to widen the distance between the vehicles, Plaintiff pulled his car to the side of the road and stopped, hoping the other vehicle would pass. Instead, Price also pulled his car off the road and stopped it a short distance behind

---

1. Act of July 19, 1974, P.L. 489, No. 176, § 101 *et seq.*, 40 P.S. § 1009.101 *et seq.* (hereinafter cited as the No-Fault Act or the Act).

2. Pursuant to Local Rule of Court 401.4, Defendant annexed to his motion a statement of the material facts not in dispute. (Doc. # 12, filed Sept. 17, 1981). Plaintiff concurs in this version of the events and admits that the facts involved in this matter are not in dispute.

(Plaintiff's Brief, Doc. # 14, filed Sept. 25, 1981).

3. Defendant is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Pennsylvania. Jurisdiction over this matter is therefore based on diversity of citizenship between the parties, 28 U.S.C. § 1332.

Plaintiff's automobile. Plaintiff then alighted from his vehicle, walked back to Price's car and took a position alongside the driver's window, confronting Price about his tailgating. Price drew a handgun from the glove compartment of his automobile and pointed it at Plaintiff. A struggle for control of the weapon ensued, and the gun fired, hitting and injuring Plaintiff's finger. After gaining control of the weapon, Plaintiff attempted to unload it and return it to Price. However, while Plaintiff was in the process of doing this, Price reached from the driver's seat of his car and grabbed the weapon. At this point the gun discharged a second time, the bullet striking Plaintiff in the abdomen. Plaintiff fell to the ground alongside Price's vehicle, and remained there until medical assistance arrived.

On October 7, 1980, Plaintiff's counsel filed a notice of representation with Defendant, in accordance with 40 P.S. § 1009.-107 and on November 21, 1980, Defendant denied Plaintiff's claim for no-fault benefits. As previously noted, the instant declaratory judgment action was filed with this Court on March 16, 1981.

The central issue raised by the cross-motions of the parties is whether the Plaintiff, in these factual circumstances, qualifies as a "victim" entitled to "basic loss benefits"[4] under this state's no-fault statute. Under section 201(a) of the Act, any "victim" of an accident which occurs in this Commonwealth resulting in injury is entitled to basic loss benefits. 40 P.S. § 1009.201(a). The No-Fault Act defines "victim" as "an individual who suffers injury <u>arising out of the maintenance or use of a motor vehicle</u> . . . ." 40 P.S. § 1009.103 (emphasis added). The statute further defines the above underscored phrase as follows:

> "Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to the maintenance or use as a motor vehicle, occupying, entering into, or alighting from it. 40 P.S. § 1009.103.

Thus, the precise question now before the Court is whether the personal injury Plaintiff admittedly suffered arose out of the "maintenance or use of a motor vehicle" within the meaning of the No-Fault Act.

In interpreting the relevant provisions of the Pennsylvania No-Fault Act, we are, of course, bound by the construction given its statutory terms by the Supreme Court of Pennsylvania. *Schmidt v. Hewitt*, 573 F.2d 794, 797 (3d Cir. 1978); *National Surety Corp. v. Midland Bank*, 551 F.2d 21, 28 (3d Cir. 1977); *Mazzula v. Monarch Life Insurance Co.*, 487 F.Supp. 1299, 1300 (E.D. Pa.1980); see generally *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where the highest court of the Commonwealth has not decided the question, then we must predict the manner in which that court would decide the issue. *Becker v. Interstate Properties*, 569 F.2d 1203 (3d Cir. 1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In making this prediction, decisions of the Superior Court of Pennsylvania may be considered "as an indication of how the state's highest court would rule." *Adams v. Cuyler*, 592 F.2d 720, 726 n. 5 (3d Cir. 1979), *aff'd*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). Such intermediate appellate court holdings are "presumptive evidence, rather than an absolute pronouncement, of state law." *National Surety Corp. v. Midland Bank, supra*, 551 F.2d at 30. Furthermore, even lower state court decisions may be looked to for guidance on the issue. *National Instrument Laboratories v. Hycel, Inc.*, 478 F.Supp. 1179, 1181 (D.Del.1979); *Compton v. Nationwide Mutual Insurance Co.*, 480 F.Supp. 1254, 1256 (W.D.Va.1979). In *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Supreme Court summarized the current practice in diversity cases regarding the effect of inferior court determinations in ascertaining the state law in question:

> [I]n diversity cases this Court has held that while the decrees of "lower state courts should be 'attributed some weight

---

**4.** Basic loss benefits include "work loss", "allowable expenses", "replacement services loss-es", and "survivor's losses", as defined in section 103 of the Act. 40 P.S. § 1009.103.

... the decision [is] not controlling ...'" where the highest court of the state has not spoken on the point. *King v. Order of Travelers, supra*, [333 U.S. 153] at 160–161 [68 S.Ct. 488 at 492, 92 L.Ed. 608]. And in *West v. A. T. & T. Co.*, 311 U.S. 223 [61 S.Ct. 179, 85 L.Ed. 139] (1940), this Court further held that "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*" At 237 [61 S.Ct. at 183].... This is but an application of the rule in *Erie v. Tompkins, supra*, where state law as announced by the highest court of the state is to be followed.... If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the state. 387 U.S. at 465, 87 S.Ct. at 1782 (emphasis in original).

In the instant case, neither of the litigants has cited nor has our research revealed any decision of the Supreme Court of Pennsylvania construing the statutory language at issue here, *i.e.*, "arising out of the maintenance or use of a motor vehicle", within the context of the No-Fault Act. However, several Pennsylvania Superior Court decisions are instructive on this question.

In *Dull v. Employers Mutual Casualty Company*, 278 Pa.Super. 569, 420 A.2d 688 (1980), the claimant was injured while unloading a boat from the roof of his car after he had parked the vehicle. After the trial court granted summary judgment in favor of the insurance carrier, Dull appealed arguing that he was a "victim" under the No-Fault Act because his conduct in unloading the boat occurred while he either was "occupying" or "alighting from" his vehicle. In rejecting the appellant's argument that the statutory language of the Act should be broadly construed to encompass his conduct, the Superior Court stated:

> We conclude that in this case the words "occupying" and "alighting from" should be construed according to their common meaning. As previously noted, the purpose of the No-Fault Act is "to establish ... a Statewide system of prompt and adequate basic loss benefits for *motor vehicle accident victims* ...." 40 P.S. § 1009.102(b). The lower court correctly noted in its opinion that appellant was not involved in a motor vehicle accident. Consequently, the legislative purpose would not be furthered by extending liability under the No-Fault Act to the facts of this case. We do not decide whether in all cases the words "occupying, entering into, or alighting from" as used in section 103 of the No-Fault Act should be given their common meaning. We believe, however, that those words should be so construed where, as here, a broad construction will not promote the purpose of the No-Fault Act. Accordingly, we agree with the lower court that appellant did not meet the statutory definition of "victim" and, therefore, is not entitled to basic loss benefits from his insurance carrier. 278 Pa.Super. at 573, 420 A.2d 688 (emphasis in original).

The legislative purpose of the No-Fault Act, *i.e.*, to provide a system of benefits only for motor vehicle accident victims,[5] was again emphasized in *Crusco v. Insurance Company of North America*, 292 Pa. Super. 293, 437 A.2d 52 (1981), a recent Superior Court decision denying basic loss benefits to an insured under the No-Fault Act. In *Crusco*, the claimant's decedent was killed when an explosion occurred in the motor home she was occupying. The motor home was covered by a policy of insurance issued pursuant to the No-Fault Act; however, at the time of the incident, the motor home was parked in a parking lot of the manufacturer of the vehicle. In pursuing her claim for benefits, Crusco con-

---

5. 40 P.S. § 1009.102(b); see *DuBose v. McCoy*, 277 Pa.Super. 149, 419 A.2d 705 (1980); *Hayes v. Erie Insurance Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978); *Singer v. Sheppard*, 33 Pa.Cmwlth. 276, 381 A.2d 1007 (1978).

tended that the accident "arose out of the use of a motor vehicle" and that the policy should therefore be interpreted as providing coverage. The Superior Court rejected the claimant's argument and affirmed the lower court's grant of summary judgment in favor of the insurer, stating:

> [T]he construction of the statute urged upon us by appellant would require that we ignore the statute's mandate that the accident result from use of the vehicle *as a vehicle.* Yet, in construing the language of a statute, the court must assume that the legislature intended that every word of the statute would have effect .... Furthermore, it is assumed that the legislature uses words in their standard, or accepted, sense....
>
> The plain meaning of the statutory terms calls for rejection of appellant's claim. The decedent was not a motor vehicle accident victim and therefore the purpose of the Act would not be effectuated by making No-fault payment to appellant. See *Dull v. Employers Mutual Casualty Company, supra,* 437 A.2d at 53–54. (Emphasis in original and citations omitted).

In *Day v. State Farm Mutual Insurance Company,* 261 Pa.Super. 216, 396 A.2d 3 (1978), the Superior Court construed a similar "maintenance or use" provision under the Uninsured Motorist Act [6] in a closely analogous factual situation. In *Day,* the insured was involved in a collision with a truck operated by another driver, Jimmie Williams. Immediately following the collision, both drivers pulled over to the curb and stopped. They then alighted from their vehicles, and engaged in an argument which resulted in a fist fight in which Day sustained a broken ankle. After Williams' insurer denied liability, Day brought suit against his carrier on the uninsured motorist provision of his policy. The Superior

Court, however, held that the injury sustained by the insured was not within the scope and terms of his policy. In doing so, the appellate court reasoned:

> The real issue in this case involves the instrumentality used to cause the injury .... *Automobile insurance ... [is] designed to compensate victims for vehicle-caused injuries. There must be some connection between the harm done and the insured vehicle ....* The vehicle itself is covered by the automobile policy, and an individual is covered only by nature of his function as the driver of that vehicle. The intent of the driver becomes relevant only after a determination is made that the injury complained of was caused by the vehicle. This is, in fact, the meaning of the language "arising out of the ownership, maintenance, or use of such uninsured motor vehicle," contained in the State Farm policy.
>
> In the instant case, Day's broken ankle was caused by Williams knocking him down with his fists, not with his truck. In point of fact, no injury was caused by the collision of the two vehicles in question. Williams was clearly not behaving as a motorist at the time of his assault on Day. *Id.* at 219–20, 396 A.2d 3. (Emphasis added and citations omitted).

See also *Schweitzer v. Aetna Life & Casualty Co.,* 102 Dauphin Cty. 358 (1981); *GEICO v. Amabile,* 11 D. & C.3d 14 (1978); *Ash v. Commonwealth Realty Company,* 4 D. & C.3d 418 (1978); cf. *Manufacturer's Casualty Insurance Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961) (must be causal connection between use of vehicle and accident).

As previously noted, in deciding the present issue, it is the task of this Court to predict how the highest court of the Commonwealth would rule on the question. After reviewing the Superior Court deci-

---

6. Act of August 14, 1963, P.L. 909, § 1 as amended December 19, 1968, P.L. 1254, No. 397, § 1, effective January 1, 1969, 40 P.S. § 2000. The provision of the policy at issue in *Day* read as follows:

"[State Farm agrees to] pay all sums which the insured or his legal representative shall

be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, *caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.*" (emphasis added).

sions in *Dull, Crusco* and *Day, supra,* and finding no persuasive indications that the highest state court would decide otherwise, we conclude that, in this factual setting, the Supreme Court of Pennsylvania would not allow Plaintiff to recover basic loss benefits under the No-Fault Act. Specifically, these intermediate appellate court decisions stress the legislative intent of the Act in providing an efficient compensation scheme for "motor vehicle accident victims." 40 P.S. § 1009.102(b). Consequently, they mandate that there be a fairly close causal connection between the injury sustained and the insured vehicle, since the Act was designed to compensate victims for "vehicle-caused injuries." *Day, supra,* 261 Pa.Super. at 219, 396 A.2d 3. Such a nexus is completely lacking in the instant circumstances as Plaintiff's injury did not result from a "motor vehicle accident." Rather, the undisputed facts of this case reveal that his injury was caused by two gunshot wounds, sustained at a time when Plaintiff was neither "occupying", "entering into", or "alighting from" his automobile. Thus, the causal connection between Lewis' injuries and the use of his vehicle is, at best, tenuous, and certainly insufficient under the Superior Court decisions discussed above. In view of such an insubstantial cause and effect relationship, we do not believe that the legislative purpose of the No-Fault Act would be furthered by extending liability to the facts of this case. Accordingly, we hold that Plaintiff did not suffer an injury "arising out of the maintenance or use of a motor vehicle" and, thus, was not a "victim" within the meaning of the No-Fault Act.[7] We will therefore grant the Defendant's motion for summary judgment.

An appropriate Order will be entered.

---

**7.** In view of this holding, we need not address Defendant's alternative argument that Plaintiff is precluded from recovering no-fault benefits because his injury was "intentionally" rather than "accidentally" inflicted.