535 A.2d 1070

Thomas McGILLEY and Gertrude McGilley, h/w,

v.

CHUBB & SON, INC. and Southeastern Pennsylvania Transportation Authority.

Appeal of SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Superior Court of Pennsylvania.

Argued Sept. 2, 1987.

Filed Dec. 9, 1987.

Reargument Denied Feb. 5, 1988.

o

548

Alfred W. Putnam, Jr., Philadelphia, for appellant.

Charles W. Craven, Philadelphia, for appellee.

Before CAVANAUGH, ROWLEY and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal by the Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA") from an order of the Court of Common Pleas of Philadelphia County, denying SEPTA's request for post trial relief from the trial court's initial order directing a verdict in favor of appellee Chubb and Sons, Inc. (hereinafter "Chubb") under Pennsylvania's No-fault Motor Vehicle Insurance Act.[1] (hereinafter "No-fault Act"). We affirm.

The events leading up to this action began on August 15, 1980 when Thomas McGilley, a cab driver, pulled into a line of cabs at a cab stand in front of the Warwick Hotel in Philadelphia. The cab that McGilley was driving was owned by Mar–Jan Taxi Company, which insured the cab under a policy with Chubb.[2] When Mr. McGilley pulled into the cab stand at approximately 10:25 in the morning, his plan was to pick up a short fare before meeting his partner, James Burns, for lunch at around noon. The rendezvous was to take place at a small restaurant approximately fifty (50) feet away from the Warwick Hotel, at which time, Mr. McGilley would exchange the cab for Mr. Burns' private

---

1. Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101–.601, *repealed by* Act of February 12, 1984, P.L. 26, No. 11 § 8(a), *effective* October 1, 1984.

2. Mar-Jan leased the cab to James Burns, who split a 12 hour shift with Mr. McGilley. At the end of each 12 hour shift Mr. Burns and Mr. McGilley would meet and split the fares earned.

automobile and proceed to take his family to the New Jersey shore.

After waiting in line for approximately twenty minutes, Mr. McGilley turned his ignition key to off, got out, and walked to the cab in front of his to "bum a cigarette" from the driver. As he was chatting with the driver about the day's business, a SEPTA bus approached from the rear. When warned by the driver of the other cab about the oncoming bus, Mr. McGilley attempted to make his way to the curb, but unfortunately to no avail. The bus struck him resulting in the loss of his leg.

Mr. McGilley filed an action in trespass against SEPTA which was settled.[3] However, the settlement with SEPTA excluded Mr. McGilley's medical expenses. Consequently, he filed a claim against the Mar–Jan Taxi Company, his employer, under the Workmen's Compensation Act.[4] Because Mar–Jan failed to carry such insurance, Mr. McGilley, who owned no car and therefore carried no automobile insurance of his own, filed suit under the No-fault Act against Chubb, Mar–Jan's no fault insurance carrier.[5] Alternatively, Mr. McGilley sued SEPTA, a self-insured entity, also under the No-fault Act.

3. *McGilley v. SEPTA* (No. 2236 C.C.P. Philadelphia, September, 1980).

4. Where an employee is injured in a motor vehicle accident while operating his employer's vehicle in the course of employment, the employee is generally relegated to the following:
(1) A claim for worker's compensation against his employer;
(2) For any loss in excess of the worker's compensation coverage, the employee may bring an action against his personal No-fault insurer or, if none, the Pennsylvania assigned claims plan.
*Harleysville Insurance Co. v. Wozniak,* 347 Pa.Super. 356, 360, 500 A.2d 872, 874 (1985).
However, where an employer does not supply worker's compensation, an injured employee may present a claim to the employer's no-fault insurer under section 204(a)(1) of the No-fault Act and bring an action at law against the employer. *Id.,* 347 Pa.Superior Ct. at 361–362, 500 A.2d at 875.

5. While Chubb argues that Mr. Burns, rather than Mar–Jan, was Mr. McGilley's employer within the meaning of section 204(a)(1), this issue was not raised below and is therefore waived for purposes of our review. *Wenzel v. Morris Distributing Company,* 439 Pa. 364, 266 A.2d 662 (1970).

A trial was held before a jury. Mr. McGilley was the sole witness presented and at the close of his testimony all parties moved for a directed verdict. The stipulation of facts between the parties[6] and the interim settlement agreement,[7] when read together, left a purely legal question, that is, whether SEPTA or Chubb was the obligor responsible for compensating Mr. McGilley under the priorities established in Section 204(a) of the No-fault Act. The trial court directed a verdict in favor of Chubb and against SEPTA, finding that under the No-fault Statute SEPTA was the obligor responsible for paying basic loss benefits to Mr. McGilley. SEPTA's post-trial motion was denied and this appeal followed.

The question before us today is whether the trial court properly concluded that SEPTA was responsible for the payment of basic loss benefits under the priority provisions of Section 204(a) of the No-fault Act, 40 P.S. § 1009.204(a). The resolution of this question requires us to determine: (1) Whether McGilley was "occupying" the cab at the time of the accident and (2) Whether the Act's definition of an "insured" preempts the definition of an "insured" found in the Chubb insurance policy for purposes of determining the applicable security under Section 204(a).

Initially, we note that our scope of review of a trial court's decision to direct a verdict is limited to a determination of whether there exists "an abuse of discretion or error of law which controlled the outcome of the case." *Jozsa v. Hottenstein*, 364 Pa.Super. 469, 528 A.2d 606 (1987), *citing*

6. By written agreement the parties were able to stipulate to many of the facts as set forth above. However, they expressly left open the question of whether Mr. McGilley was using the cab at the time of the accident. See Stipulation of Facts (R.21a).

7. The parties entered into a partial and interim settlement agreement for the purpose of providing prompt compensation to Mr. McGilley and to avoid the need for a trial on damages. The agreement provided that SEPTA and Chubb would pay $110,000 into escrow for Mr. McGilley. The party who was found obligated to compensate Mr. McGilley in the present action would then reimburse the other party in the amount of $110,000 (R.16a).

*McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982).

In *McMullin v. Dallago,* 353 Pa.Super. 527, 510 A.2d 787, (1986), we explained the purpose behind the enactment of Pennsylvania's No-fault Insurance Act, as well as the types of insurance coverage required on vehicles registered in the Commonwealth:

> The stated purpose of the Pennsylvania No-fault Motor Vehicle Insurance Act was "to establish at reasonable cost to the purchaser of insurance a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b). To accomplish this purpose, the Act required every vehicle registered or operated in Pennsylvania to be insured, either by a policy of insurance, or by self-insurance. 40 P.S. § 1009.104. This insurance had to provide for the payment of basic loss benefits and for the payment of statutorily-designated sums which the owner or authorized operator may be liable to pay as damages for personal injury to any one person and for property destruction. 40 P.S. § 1009.104(a); *Tierney v. Pennsylvania Assigned Claims Plan,* 319 Pa.Super. 299, 466 A.2d 168 (1983). Thus, an owner or authorized operator, driving an insured vehicle, who was injured in an automobile accident was to be paid basic loss benefits by his insurer whether he was at fault or not. At the same time he was covered up to the limits of his insurance policy for any tort liability he may have incurred. 40 P.S. § 1009.111.

*Id.,* 353 Pa.Superior Ct. at 530–31, 510 A.2d at 789–90.

Section 201 of the No-fault Act entitles any "victim" [8] of an accident or survivor of a deceased victim to recover "basic loss benefits" [9] in accordance with the provisions of the Act. 40 P.S. § 1009.201.

---

**8.** Victim is defined as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." Pa.P.S. § 1009.103).

**9.** Basic loss benefits are benefits "for the net loss sustained by the victim, subject to any applicable limitations, exclusions, deductibles,

---

■  Section 204 of the No-fault Act establishes "categories and priorities as between insurers responsible for payment of benefits" to the victims of motor vehicle accidents. 40 P.S. § 1009.204; *Tyler v. Insurance Co. of North America*, 311 Pa.Super. 25, 29, 457 A.2d 95, 96 (1983) (citations omitted). Section 204(a), entitled "Source of Basic Restoration Benefits," provides:

(a) Applicable Security.—The security for the payment of basic loss benefits applicable to an injury to:

(1) An employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such a vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause an unreasonable risk of injury;  and

(5) any other individual is the applicable assigned claims plan.

40 P.S.A. § 1009.204(a).

It is well-settled that in order to determine the applicable source of basic loss benefits under the priority provisions of

writing periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act, but do not include "benefits for damage to property" or "beneifts for net loss sustained by an operator or passenger of a motorcycle." 40 P.S. § 1009.103.

Section 204(a), each preceding subsection in the hierarchy must be excluded before the next subsection may be considered, with the security provided by the assigned claims plan applicable only as a last resort. *McCabe v. Prudential Property and Casualty Insurance Company*, 356 Pa.Super. 223, 227, 514 A.2d 582, 584 (1986); *Tyler, supra* 311 Pa.Super. at 30, 457 A.2d at 97.

In the case sub judice it is undisputed that Mr. McGilley is a "victim" within the meaning of the Act and entitled to basic loss benefits. The only question is who is responsible for payment of these benefits under the priority provisions of Section 204(a). If Section 204(a)(1) or (a)(2) or (a)(3) is deemed applicable to the facts of this case, then Chubb, the insurer of the Mar–Jan cab, would be responsible for payment of basic loss benefits to Mr. McGilley. If none of the preceding sections apply, then SEPTA is the applicable security under 204(a)(4) since its bus was "a motor vehicle involved in an accident resulting in injury."

■ Because Mr. McGilley was not driving at the time of the accident, in order for either Section 204(a)(1) or 204(a)(3) to apply, making the security covering the Mar–Jan cab responsible, McGilley must have been "occupying" the cab at the time of the accident.

We first addressed the scope of the concept of occupancy under Section 204(a) in *Tyler, supra*. In *Tyler*, the plaintiff was a passenger on a bus owned by a transit company. She was struck by a motorcycle passing on the right as she was stepping off the bus. Neither the plaintiff nor any member of her household had applicable no-fault coverage. Therefore, she filed a claim against the transit company's no-fault carrier, which denied liability, claiming that plaintiff was a pedestrian and not an occupant of the bus at the time of the accident. In finding that the plaintiff was occupying the bus at the time of the accident, we stated:

> In general, it can be said that a person who is alighting from a vehicle is still an occupant thereof. He continues to 'occupy' the motor vehicle until he severs all connection with it. That point of severance is reached when he

becomes highway oriented as opposed to being vehicle oriented. Until then, the alighting passenger continues to be an occupant of the bus. Until such a person is on his or her own without reference to the bus, the person has not ceased to be a passenger or occupant.

*Id.*, 311 Pa.Superior Ct. at 31, 457 A.2d at 97.

Subsequently our supreme court, in *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984), expanded the test laid down in *Tyler*. In that case the claimant, Mr. Contrisciane, was standing approximately ninety-seven (97) feet from his vehicle giving information to a police officer after he was involved in a minor accident. The vehicle he was operating was owned and insured by his employer, Future Cars, Inc. While Mr. Contrisciane was standing beside the police cruiser, he was struck and killed by an uninsured motorist. His estate filed a claim against Utica Mutual Insurance Company, the insurance carrier for Future Cars, Inc., alleging that Mr. Contrisciane was "occupying" the insured vehicle at the time of the accident. Our supreme court rejected a strict definition of the term "occupying", requiring physical contact with the vehicle, and adopted a liberal approach which focuses on whether the "claimant was performing an act normally associated with the immediate use of the vehicle." [10] *Id.*, 504 Pa. at 335, 473

---

**10.** The court believed that this approach best comported with the policy behind the Uninsured Motorist Act, 40 P.S. § 2000, which was intended to protect "those persons who while lawfully using the highways themselves suffer grave injuries through the use of those highways by others."

We note that a number of decisions in Pennsylvania, as well as in other jurisdictions, rely on public policy considerations in giving a liberal construction to the term "occupying." These policy considerations include the liberal construction of no-fault statutes to provide for recovery in accordance with their remedial purposes, as well as the maxim that ambiguous policy provisions should be construed against the insurer. However, these policy considerations appear to be more compelling in determining whether the claimant is entitled to be compensated under the applicable No-fault Act. Such policy considerations are less compelling in construing the term "occupancy" where the question is not coverage under the Act, but merely priority, as in the present case, between two insurers. Moreover, in contrast to *Contrisciane*, where the court was construing a term contained in the insurance policy, we are presently construing a statutory term. The

A.2d at 1009. In finding that Mr. Contrisciane was an occupant of his employer's vehicle the court stated:

> [W]e hold that when a person is engaged in the lawful use of an insured vehicle, he will be considered to be "occupying" that vehicle within the meaning of the policy, provided he can meet the following criteria:
>
>> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>>
>> (2) the person asserting· coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>>
>> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time;  and
>>
>> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.*

In the case *sub judice* the trial court found that the first two criteria were met, but that Mr. McGilley did not fulfill the third and fourth criteria because he was "highway oriented" and was not "engaged in a transaction essential to the use of the vehicle." We agree.

In contrast to *Tyler* where the plaintiff was injured in the process of alighting from the bus, Mr. McGilley had completed the process of alighting from the taxi at the time that he was struck by the SEPTA bus. Mr. McGilley had stopped his cab at the cab stand in front of the Warwick Hotel. There were several cabs ahead of him and, after waiting for approximately twenty minutes, he turned off the ignition, took the keys, and turned off the cab's independently operated dome light, which when off, indicates that the cab is not in service. Mr. McGilley then walked to the cab in front of him to "bum a cigarette." He testified that after securing a cigarette· he planned to ask the doorman at the Warwick if he wanted coffee and then go to "Little

maxim that ambiguous provisions should be construed against the drafter is therefore inapplicable to this case. *See* Annotation, What Constitutes Occupancy of Motor Vehicle for Purposes of No Fault Automobile Insurance Coverage, 35 ALR 4th 364 (1985).

Pete's" to purchase a pack of cigarettes and meet Mr. Burns, his partner, for lunch.[11] After dividing the fares, Mr. McGilley was planning to exchange the cab for Mr. Burns' car and take his family to the beach. The SEPTA bus struck Mr. McGilley just after he obtained a cigarette from the driver in front of him. We conclude that these facts demonstrate that Mr. McGilley had severed his relationship with his cab at the time of the accident. Consequently Mr. McGilley was "highway" rather than "vehicle" oriented at the time he was injured.

We also conclude that Mr. McGilley was not involved in a transaction essential to the use of the vehicle at the time of the accident. The present case is distinguishable from *Contrisciane, supra,* 504 Pa. at 328, 473 A.2d at 1005. The court's determination that Mr. Contrisciane was occupying his employer's vehicle, even though he was situated ninety-seven (97) feet away exchanging information with a police officer, rested on two considerations. First, Mr. Contrisciane's fiance remained in the vehicle during the entire time, indicating that they anticipated resuming their journey following the exchange of information. The court also relied on the fact that it was only because a statute required Mr. Contrisciane to stop his vehicle and exchange information and the police officer requested production of an owner's card that Mr. Contrisciane found himself out of physical contact with his vehicle. Unlike Mr. Contrisciane, Mr. McGilley's presence outside the cab was not necessitated by duties or obligations incident to his use of the taxi cab. At the time of the accident Mr. McGilley had effectively terminated his association with the taxi cab and was in pursuit of his own personal needs. We find that leaving a vehicle for the primary purpose of securing a cigarette is not a transaction "essential to the use of the vehicle." [12]

11. Although the record is unclear, it appears that Mr. McGilley abandoned his original plan to pick up a short fare before proceeding to lunch.

12. SEPTA's reliance on *Rau v. Liberty Mutual Insurance Company,* 21 Wash.App. 326, 585 P.2d 157 (1978) is misplaced. In *Rau* the truck driver was returning to his truck after asking directions when he was

Because of our determination that Mr. McGilley was not an "occupant" of the cab insured by Chubb, neither Section 204(a)(1) nor (a)(3) are applicable. As a result, unless the facts of the instant case fall within Section 204(a)(2), SEP-TA will be the applicable security under Section 204(a)(4).

Section 204(a)(2) provides that the applicable security "to an injury to ... an insured is the security under which the victim or deceased victim is insured." 40 P.S. § 1009.-204(a)(4). SEPTA claims that the trial court erred in applying the statutory definition of "insured", rather than the more liberal definition of "insured" contained in the policy issued by Chubb to the Mar–Jan Taxi Company. Section 103 of the No-fault Act provides in pertinent part that:

> Insured means (a) *an individual identified by name as an insured in a contract of basic loss insurance complying with this Act;* and (b) spouse or other relative of a named insured, and a minor in the custody of a relative of a named insured if
>
> (i) not identified in any other contract of basic restoration insurance complying with this act; and
>
> (ii) in residence in the same household with a named insured....

40 P.S. § 1009.103 (emphasis added). However, the insurance policy issued by Chubb contains a broader definition of "persons insured." The policy provides as follows:

struck by an uninsured motorist. The court concluded that Rau was "using" the truck for purposes of the policy definition of "insured." Rau's physical presence outside his vehicle was necessary for the continued use of his vehicle, to which he was returning when injured. Moreover, the court's decision in *Rau* seems to rest more on contract principles and policy considerations than does the present case. In *Rau* the court was construing a contractual definition of "insured" and appeared to be influenced by the maxim that ambiguous provisions should be construed against the insurer. In addition, the court's liberal interpretation was influenced by the policy behind the uninsured motorist statute of compensating victims for the acts of irresponsible drivers. These considerations do not weigh heavily in the present case because we are construing a statutory rather than a contractual term, and it is clear that Mr. McGilley will be compensated by either Chubb or SEPTA, regardless of our construction of the term "occupying."

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) any partner or executive officer thereof, but with respect to a temporary substitute automobile only while such automobile is being used in the business of the named insured;

(c) *any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:*

(1) a lessee or borrower of the automobile or

(2) an employee of the named insured of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.

(emphasis added.) Consequently, if the Act's definition of insured is controlling, Mr. McGilley would not be an insured because he was neither named in the policy nor a spouse or relative of a named insured in the policy. But, if the policy provision is applicable, then Mr. McGilley would fall within subsection (c) of the definition since he was injured while using the cab with the permission of the named insured.[13]

**13.** The term "using" is accorded a more liberal interpretation than the term "occupant". Courts generally apply a causal analysis in determining whether a claimant was using a motor vehicle. The test is generally that there must be a sufficiently close connection between the injuries sustained and the insured vehicle. *See Lewis v. Nationwide Insurance Co.,* 541 F.Supp. 951 (1982 M.D.Pa.); *Fire Insurance Exchange v. Eisenhuth,* 305 Pa.Super. 571, 451 A.2d 1024 (1942). While Mr. McGilley was not an occupant of the Mar–Jan Cab, the causal connection between the injuries sustained and the cab were sufficiently close to satisfy the "use" requirement. *See also* D. Shrager, The Pennsylvania No-fault Motor Vehicle Insurance Act 62–64 (1979).

Our analysis of this issue begins with an oft-cited principle of statutory construction:

[W]hen the words of a statute are clear and free from all ambiguities, the letter of it is not to be disregarded under the pretext of pursuing the spirit.

1 Pa. C.S.A. § 1921(b). As with any statute, in construing the No-fault Act we look first to the express language of the statute to determine the intent of the legislature. If the language of the statute is unclear we may then look to external sources as an aid to interpretation. However, where the statute expressly defines what a term means, the legislature has created its own dictionary and the meaning of the term as defined excludes any other meaning. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979); *Hughes v. School District of Pittsburgh,* 379 Pa. 145, 148, 108 A.2d 698, 699 (1954).

Our legislature expressly declared that one of the major purposes in enacting the Pennsylvania No-fault Motor Vehicle Insurance Act was to provide "a statewide low-cost *comprehensive* and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(a)(4) (emphasis supplied). As an integral part of this comprehensive system, Section 204(a) sets forth the general rules for determining the source of basic loss benefits for injuries arising out of a motor vehicle accident. In order to ensure that the No-fault Statute operated to effectuate the legislature's intent, Section 103 was incorporated into the Act. Section 103 is comprised of a series of definitions which are to be applied throughout the statutory framework.[14]

SEPTA maintains that while the terms of an insurance contract may not restrict the coverage required by the Act, the carrier may provide broader coverage than the Act

**14.** We note that the preamble to Section 103 begins with "[a]s used in this Act:" and then goes on to define a series of terms. Because the no-fault system was intended to be comprehensive, we believe that the language in the preamble to Section 103 accentuates the importance of consistent application of the statutory definitions in order for the various provisions of the Act to interrelate as intended.

requires. As a result SEPTA contends that the definition of "insured" contained in the Chubb policy should be incorporated into Section 204(a)(2), making Chubb the applicable security.

SEPTA's argument fails for several reasons. First, the No-fault statute was designed to provide an effective remedy for the victims of motor vehicle accidents. This remedy was created by our legislature and is properly interpreted by applying statutory and constitutional principles rather than contractual principles. 3 A. Corbin, Corbin on Contracts § 551 (1951). Consequently, the statutory definition of "insured" must be interpreted in accordance with the intention of the legislature. That the parties to an insurance contract may have intended a different meaning is of no consequence in our analysis. Moreover, contrary to SEPTA's contention, coverage would not be extended in the present case by reading the broad policy definition of "insured" into Section 204(a)(2). Section 204(a) creates a procedural [15] hierarchy which is applied to determine which insurance policy will pay basic loss benefits to the claimant. *See Tyler, supra,* 311 Pa.Superior Ct. at 30, 457 A.2d at 97. While reading the policy definition of "insured" into the Act would change the party responsible for paying basic loss benefits to Mr. McGilley, it would not extend the coverage provided under the Act. This is not a case where the question is whether a given claimant is entitled to basic loss benefits under the Act. Under such circumstances our analysis would require us to consider the Act in light of its remedial purpose of providing prompt compensation to victims. *See Bills v. Nationwide Insurance Company,* 317 Pa.Super. 188, 463 A.2d 1144 (1983) (courts should err in favor of coverage in construing No-fault Act). The question here is which of the two insurers is responsible for compensating a victim who is entitled to receive basic loss

**15.** Generally, the provisions of an act providing a method of procedure must be strictly construed and exclusively applied. *See In re Shapp,* 28 Pa.Comwlth. 163, 368 A.2d 858, *aff'd* 476 Pa. 480, 383 A.2d 201 (1977).

benefits.[16] We conclude that in such a situation the terms of the statute control. Because Mr. McGilley was not named in the Chubb insurance policy, he does not fit the definition of "insured" provided in Section 103 of the Act. As a result Section 204(a)(2) is inapplicable.[17]

Our elimination of the applicability of Sections 204(a)(1), (2) and (3) requires us to examine Section 204(a)(4) as required by *Tyler, supra* and it progeny. Because Mr. McGilley is not an "insured" or a "driver or other occupant" of a motor vehicle, the applicable security under Section 204(a)(4) is "the security of any motor vehicle involved in an accident." The SEPTA bus which injured Mr. McGilley clearly fits within this definition, making SEPTA responsible for payment of Mr. McGilley's basic loss benefits.

We find that the trial court properly resolved the questions of law in this case. Accordingly, the order of the trial court directing a verdict for Chubb and against SEPTA is affirmed.

Order affirmed.

16. We have already recognized that Mr. McGilley is a victim entitled to basic loss benefits. *See* 40 P.S. § 1009.103; 40 P.S. § 1009.201.

17. Our resolution of this issue is consistent with recent decisions of this court. In *Shaffer v. Pennsylvania Assigned Claims Plan,* 359 Pa.Super. 238, 247–249, 518 A.2d 1213, 1218 (1986), we used the statutory definition of "insured" provided under Section 103 to find that an insurance carrier was responsible for paying basic loss benefits under Section 204(a)(2) to both the named insured victim and the victim's spouse.