**Fisher v. Harleysville Insurance Co..**

*Michael W. Wagman,* for plaintiffs.

*William E. Haggerty,* for defendant Harleysville Insurance Co.

GEORGELIS, *J.,* February 20, 1992—Before us are two motions for summary judgment. One has been filed by the plaintiffs and the defendant, Selective Insurance Co. of America, and the second by the defendant, Harleysville Insurance Co. For the reasons stated below, the motion of the plaintiffs and Selective will be granted, and Harleysville's motion will be denied.

The facts relevant to the disposition of these motions are as follows. On November 29, 1988, Donald T. Fisher, who was 16 years old, and his cousin, Timothy Wiker, spent the morning hunting near the family cabin in Lycoming County. In the afternoon, after lunch at the cabin, they decided to hunt at a different site, which was located more than a mile from the cabin. At about 1 p.m., Wiker, Donald Fisher and his uncle, Harry L. Fisher Jr., drove there in Wiker's truck, and Harry Fisher drove it back to the cabin. Plans were made for the two hunters to be picked up when it started turning dark at approximately 5 p.m. that evening.

At approximately 4 p.m., before it had begun to turn dark, Harry Fisher returned to the drop-off site and parked the truck, facing oncoming traffic and about four feet off the road on the wide shoulder of the road. At about 5:30 p.m., after it had become dark, Donald Fisher and Wiker emerged from the woods.

Harry Fisher went to the rear of the truck, engaged the hunters in a brief, casual conversation about their afternoon and instructed them to unload their rifles. He issued this instruction because he did not feel safe around young hunters carrying loaded rifles when they were not hunting and because he was concerned about the danger of rifles and wanted to ensure their proper handling. He

had issued this same instruction to others, and he knew that it is illegal to put a loaded rifle in a vehicle. Donald Fisher also knew that putting a loaded rifle in a motor vehicle is illegal.

Harry Fisher returned to the cab of the truck, turned the headlights on to enable the hunters to see to unload their rifles and waited for them to unload. The truck's engine was running at this point. Wiker, who was the first to unload his rifle by the light of the headlights, stood in the door well of the truck and waited for Donald Fisher. Donald Fisher, who was standing within one foot of the front of the truck, then began to unload his rifle, but, before he could retrieve the shells which had fallen on the ground, he was struck by a car, which was driven by James W. Kennedy,* and was injured.

Donald Fisher was an insured under a policy, which was issued by Selective on a vehicle owned by his parents and which provided underinsurance coverage. Harleysville insured the truck under a policy which also provided underinsurance coverage. With the Allstate policy's liability limits having been paid, the plaintiffs are seeking the underinsurance coverage of these two policies, and the availability of the Harleysville coverage is the crux of the dispute in the motions before us.

We begin our analysis of these motions by examining the standard by which we must be guided in considering the entry of summary judgment. Summary judgment should be entered only "if the pleadings, depositions,

---

\* Kennedy and his liability insurance carrier, Allstate Insurance Co., are co-defendants in this action but are not involved in the motions before us; they were named by the plaintiffs as a precautionary measure. Allstate has paid its $15,000 liability limits to the plaintiffs.

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...." Pa.R.C.P. 1035(b). The court must view the evidence in the light most favorable to the non-moving party, and any doubts must be resolved against the entry of summary judgment. *Yaindle v. Ingersoll-Rand Co.*, 281 Pa. Super. 560, 422 A.2d 611 (1980).

After reviewing the facts, as presented to us by the parties and as summarized above, we are satisfied that those material to the disposition of the two motions are not in dispute. We are, therefore, left with deciding whether any movant is entitled to a judgment as a matter of law.

In making that decision, we are confronted with the legal issue presented by the two motions, which issue is whether Harleysville is obligated to make its underinsured motorist coverage available to the plaintiffs for Donald Fisher's injuries. This issue leads us to examine some of the UIM provisions of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et. seq. In the section, which is entitled "Availability, scope and amount of coverage," the Law provides:

"(c) *Underinsured motorist coverage*—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles...." 75 Pa.C.S. §1731(c).

The section, which is entitled "Priority of recovery" provides:

"Where multiple policies apply, payment shall be made in the following order of priority:

"(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

"(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured." 75 Pa.C.S. §1733. (emphasis added)

To settle the parties' disagreement, we must decide whether, at the time of the accident, Donald Fisher "occupied" the truck, within the meaning of 75 Pa.C.S. §1733(1). In making this decision, we are guided by *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984), in which our Supreme Court interpreted the term "occupying" and held:

"[W]hen a person is engaged in the lawful use of an automobile, he will be considered to be 'occupying' that vehicle within the meaning of the policy provided he can meet the following criteria:

"(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

"(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

"(3) the person must be vehicle oriented rather than highway ... oriented at the time; and

"(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." *Utica* at 336, 473 A.2d at 1009. (citation omitted)

We shall address these criteria seriatim.

As to the first, the plaintiffs and Selective contend that the causal relation requirement has been met, because Donald Fisher would not have been unloading his rifle

in front of the truck and Kennedy's car would not have hit him, had the truck not been in use to transport him and Wiker back to the cabin. Harleysville, on the other hand, contends that Donald Fisher just happened to be standing by the truck when he was hit, which does not connect the truck to the accident, and that his injuries were caused by the acts of a third party, which acts were unrelated to the insured vehicle.

There is no question that Donald Fisher's injuries were caused by a third party, but we do not agree with Harleysville that there was no causal relation between his injuries and the use of the truck. Were it not for his uncle's insistence that his rifle be unloaded before he got into the truck and were he not standing in such a way to use the headlights of the truck to unload the rifle, he may very well not have suffered his injuries. His use of the truck required the unloading of his rifle, and this required the use of the truck's headlights. We believe these undisputed facts amply establish a causal connection between his injuries and his use of the truck.

The parties agree that the second *Utica* criterion, that Donald Fisher was in reasonably close geographic proximity to the truck, has been met. We turn then to the third, i.e., whether he was vehicle or highway oriented when he was injured. The plaintiffs and Selective contend that the intent of the injured person is the determining factor as to this criterion. They refer us to *McGilley v. Chubb & Son Inc.,* 369 Pa. Super. 547, 535 A.2d 1070 (1987), *allocatur denied,* 520 Pa. 601, 553 A.2d 964 (1988), in which the Superior Court considered whether a cab driver possessed the intent to return to his cab, where, during the time he left his cab to "bum"

a cigarette and go to a restaurant for lunch, he was struck by a bus. It determined that the cab driver was highway, not vehicle, oriented because he "had severed his relationship with his cab at the time of the accident." *Id.* at 557, 535 A.2d at 1075-76.

In *Shultz v. Nationwide Insurance Co.,* 373 Pa. Super. 429, 541 A.2d 391 (1988), the Superior Court held that a person was vehicle oriented when she was struck and injured on the road while she was filling her fuel tank, after having run out of gas and going to obtain it. It stated, "[b]ecause she was engaged in a transaction essential to [her vehicle's] use, it is beyond serious dispute that she was vehicle oriented.... Any other conclusion would be wholly unrealistic." 373 Pa. Super. at 433-34, 541 A.2d at 393.

The plaintiffs and Selective contend that Donald Fisher's intent, after he unloaded his rifle, is the factor which determines whether he was vehicle or highway oriented. They argue that, since: (1) his uncle was sitting in the cab of the truck and was waiting for the hunters to unload their rifles and to get into the truck; (2) Wiker was standing inside the passenger side door well, having already unloaded his rifle and waiting for Donald Fisher to unload his; and (3) the truck was running and was there to take the hunters back to the cabin, Donald Fisher's intent was to get into the truck for a ride back to the cabin and that he was, consequently, vehicle oriented.

Harleysville contends that Donald Fisher was not vehicle oriented because: (1) he was unloading his rifle, which is a task involved with hunting; (2) he had not yet entered the truck; and (3) he had left the truck for a long period of time. Focusing on the time factor, it contends that, only when a driver leaves his vehicle for a short time to carry out a transaction essential to the

use of the vehicle, is he vehicle oriented. However, Harleysville does not refer us to any authority for this proposition that the time factor is significant in determining whether a person is vehicle oriented.

We do not believe that Harleysville's argument that Donald Fisher's rifle unloading was a hunting-related task and that this task, along with his not having yet entered the truck, prevent his being vehicle oriented at the time of the accident is persuasive. In *Travelers Indemnity Co. v. Commercial Union Insurance Cos.*, 368 Pa. Super. 159, 165, 533 A.2d 765, 767-68 (1987), our Superior Court held that the vehicle orientation question must be decided based on an overview of the facts in each case, and it rejected the proposition that, until the victim totally severed his last clear orientation, that orientation controls.

Similarly, we reject Harleysville's argument that, because Donald Fisher was unloading his rifle and had not yet entered the truck, he was still highway oriented. Adopting the intent analysis of *McGilley, supra,* we determine that he intended to enter the truck and that what he was doing when he was injured was being done to fulfill that intent. Accordingly, we hold that he was vehicle oriented at the time he was injured.

Finally, we shall consider the fourth *Utica* criterion, i.e., whether Donald Fisher was engaged in a transaction essential to the use of the truck when he was injured. The plaintiffs and Selective contend that he was so engaged when he was unloading his rifle before getting into the truck. They contend that unloading the rifle was essential to the use of the truck, because 34 Pa.C.S. §2503(a) mandates that "it is unlawful for any person to have a firearm of any kind in or on ... any conveyance propelled by mechanical power ... at any time whether or not the vehicle ... is in motion unless the firearm is unloaded."

Harleysville concedes that it is possible that one of the reasons that the plaintiff emptied the shells from his rifle was to comply with the mandate of the statute. However, it contends that the act of unloading the shells was not an act essential to the vehicle's use because the truck could operate whether the rifle was loaded or unloaded and that unloading the shells had nothing to do with the use of the vehicle, such as with driving it, repairing it or maintaining it. It contends further that, although riding in the truck was more convenient to the plaintiff than walking the mile or two back to the cabin, since the plaintiff was not driving the truck, it could have gone without him.

Taken out of the context of the reality of the situation which existed when Donald Fisher was injured, Harleysville's contentions might make some sense. However, they ignore the undisputed facts that Harry Fisher had driven the truck to the scene of the accident for the explicit purpose of using it to drive his nephew and Wiker back to the cabin and that both Fishers were aware of the statutory requirement to unload the rifle before placing it in the truck. Viewing these two facts together, we simply can reach no other conclusion than that Donald Fisher was, at the time of the accident, engaged in a transaction essential to the use of the truck.

Finding that the four *Utica* criteria have been met, we hold that, pursuant to 75 Pa.C.S. §1733(1), Donald Fisher was occupying the truck at the time of his accident and that Harleysville, as the insurer of the truck, must make its underinsured motorist coverage available to the plaintiffs. Accordingly, we enter the following

ORDER

And now, February 20, 1992, for all of the reasons stated in the foregoing opinion, the motion for summary

judgment of the plaintiffs and Selective Insurance Co. of America is granted, and the motion for summary judgment of Harleysville Insurance Co. is denied. Judgment is entered in favor of the plaintiffs and Selective and against Harleysville, which is directed to make its uninsured motorist coverage available to the plaintiffs in an amount to be decided by agreement of the parties or by arbitration.