457 A.2d 95

**Carol TYLER**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Auch Inter-Boro Transit Company.**

**Appeal of INSURANCE COMPANY OF NORTH AMERICA.**

Superior Court of Pennsylvania.

Argued March 3, 1982.

Filed Jan. 21, 1983.

Reargument Denied March 29, 1983.

James C. Haggerty, Philadelphia, for appellant.

Harvey Voron, Philadelphia, for Tyler, appellee.

Jay L. Edelstein, Philadelphia, for Auch, appellee.

Before WIEAND, BECK and HOFFMAN, JJ.

WIEAND, Judge:

When an uninsured passenger is struck by a motorcycle upon disembarking from a bus and before reaching the shoulder, is the insurance carrier for the bus company a proper source of basic loss benefits under Section 204 of the Pennsylvania No-fault Motor Vehicle Insurance Act?[1]  The

1.  Act of July 19, 1974, P.L. 489, No. 176, § 204, 40 P.S. § 1009.204.

trial court held that it was not a proper source and directed that basic loss benefits be paid by Insurance Company of North America (hereinafter I.N.A.), the designated carrier under the assigned claims plan. I.N.A. appealed. We reverse.

On June 1, 1980, Carol Tyler was a passenger on a bus owned by Auch Inter-Boro Transit Company (hereinafter Auch) which had been chartered to transport a gospel choir from Germantown High School in Philadelphia to the site of a concert in New Jersey. On the return trip, the bus driver was asked by a trip chaperone to stop and discharge several passengers at the intersection of Limekiln Pike and Cheltenham Avenue in Philadelphia. Carol Tyler was one of those passengers. As she stepped from the bus, which had stopped approximately five feet from the shoulder of the road, she was struck by a motorcycle which was passing the bus on the right side.

On the date of the accident, neither Carol Tyler nor any member of her household owned an automobile or had applicable no-fault insurance coverage. Auch's no-fault insurance carrier denied responsibility for no-fault benefits on grounds that Carol Tyler had been a pedestrian at the time she was struck. I.N.A. was thereafter designated as the servicing insurance company under the assigned claims plan, but it, too, denied responsibility. The instant action followed.[2] The trial court found that Carol Tyler had taken "three or four steps toward the nearest shoulder of the road" and concluded, therefore, that she was not alighting from the bus when struck but was, rather, a pedestrian.

■ That Carol Tyler was a "victim" entitled under Section 201 of the No-fault statute, 40 P.S. § 1009.201, to basic loss benefits is conceded. Clearly, she sustained injuries arising out of the "maintenance and use of a motor vehicle." This phrase, by definition, includes "occupying, entering into, or alighting from" a motor vehicle. Pennsylvania

2. The initial complaint named Auch Inter-Boro Transit Company as a defendant, but, by stipulation, its no-fault insurance carrier, Transit Casualty Company, was made a party defendant.

No-fault Motor Vehicle Insurance Act of 1974, *id.* at § 103, 40 P.S. § 1009.103. Not only was Carol Tyler struck by a motorcycle,[3] but at the time of the accident she was alighting from a bus, another motor vehicle. The present controversy concerns only the security applicable to pay the basic loss benefits which Carol Tyler is entitled to recover. Section 204 of the No-fault Act, 40 P.S. § 1009.204, establishes "categories and priorities as between insurers responsible for payment of benefits." *Schimmelbusch v. Royal-Globe Insurance Co.*, 247 Pa.Super. 28, 31, 371 A.2d 1021, 1023 (1977). This section, which in effect creates a hierarchy among potential sources of security (See: D. Shrager, The Pennsylvania No-fault Motor Vehicle Insurance Act, § 1:15.3, 1979), provides:

(a) Applicable security.—The security for the payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes

---

**3.** A motorcycle is a vehicle which must be registered under the Vehicle Code. See: 75 Pa.C.S. §§ 102, 1302. A motorcycle is, therefore, a "motor vehicle" within the meaning of the No-fault Act and is subject to the same insurance coverage requirements as are other vehicles. This is so even though under Section 103 of the Act, 40 P.S. § 1009.103, a motorcycle operator or passenger is not entitled to recover basic loss benefits.

of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

    (5) any other individual is the applicable assigned claims plan.

Pennsylvania No-fault Motor Vehicle Insurance Act of 1974, *supra* at § 204, 40 P.S. § 1009.204. In determining the applicable source of basic loss benefits under Section 204's priority system, the pertinence of each subsection must be considered seriatim—that is, the applicability of each preceding subsection must be excluded before the next may be considered. The security provided by the assigned claims plan is applicable only as a last resort.

Instantly, the inapplicability of subsections (1) and (2) has been established beyond peradventure. Carol Tyler, the basic loss benefits applicant was, at the time of the accident, neither an employee in a vehicle provided by her employer nor an insured under any policy of insurance. Accordingly, we consider first the applicability of subsection (3). The applicability of the security established therein is dependent upon the status of Carol Tyler, the claimant. If she was an "occupant of a motor vehicle involved in an accident resulting in injury" the applicable security under subsection (3) was that derived from the bus from which she had stepped when she was struck by the motorcycle.

The term "occupant" is not defined by the No-fault Act. We are guided, therefore, by the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501 et seq., and pertinent decisions in which the meaning of the term has been considered. The Statutory Construction Act provides that "[w]ords and phrases shall be construed ... according to their common and approved usage...." *Id.* at § 1903. See also: *Dull v. Employers Mutual Casualty Co.*, 278 Pa.Super. 569, 571–572, 420 A.2d 688, 689 (1980). The Statutory Construction Act also directs that remedial legislation such as the No-fault Act "shall be liberally construed to effect [its] objects and to promote justice." *Id.* at § 1928(c).

■ In general, it can be said that a person who is alighting from a vehicle is still an occupant thereof. He continues to "occupy" the motor vehicle until he severs all connection with it. That point of severance is reached when he becomes highway oriented as opposed to being vehicle oriented. Until then, the alighting passenger continues to be an occupant of the bus. Until such a person is on his or her own without reference to the bus, the person has not ceased to be a passenger or occupant. See and compare: *Allstate Insurance Co. v. Flaumenbaum*, 62 Misc.2d 32, 308 N.Y.S.2d 447 (1970) (a passenger who steps out of a taxi cab to pay his fare is still vehicle oriented); *Government Employees Insurance Co. v. Keystone Insurance Co.*, 442 F.Supp. 1130 (E.D.Pa.1977) (a passenger who leaves a vehicle to engage in a fist fight is no longer vehicle oriented).

■ Applying a vehicle oriented versus highway oriented test to the facts of the instant case, we conclude that at the time of the accident Carol Tyler had not severed her relationship with the bus from which she was alighting. The bus company had a duty, not only to carry her safely, but to afford her an opportunity to alight safely. *Homa v. Wilkes-Barre Transit Corp.*, 394 Pa. 309, 312, 147 A.2d 377, 378 (1959); *Coyne v. Pittsburgh Railways Co.*, 393 Pa. 326, 329–330, 141 A.2d 830, 832–833 (1958); *Stevens v. Reading Street Railway Co.*, 384 Pa. 390, 394–395, 121 A.2d 128, 131 (1956); *Lyons et ux. v. Pittsburgh Railways Co.*, 301 Pa. 499, 501, 152 A. 687, 688 (1930). Where, as here, the bus had stopped five feet from the safety of the shoulder, Carol Tyler continued to be vehicle oriented until she reached the shoulder of the road.

■ Moreover, under the circumstances of this case, when they are reviewed in light of the definitional section of the No-fault Act and the Pennsylvania decisions, it cannot be questioned that the Auch bus was "a motor vehicle involved in an accident resulting in injury." [4] Under the

4. It seems equally clear that the motorcycle was "involved" in the accident. However, the record does not disclose whether the motorcycle carried the mandated insurance coverage at the time of the

provisions of Section 204(a)(4), 40 P.S. § 1009.204(a)(4), the security covering a motor vehicle involved in such an accident is made applicable before that of the designated assigned claims plan carrier. Thus, even if Carol Tyler were to be considered a non-occupant of the bus, the fact that the bus was involved in the accident would require that the security covering the bus be an applicable source of basic loss benefits before the assigned claims carrier could be ordered to respond.

Reversed and remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

accident; and, in any event, neither the owner of the motorcycle nor its insurance carrier has been made a party to the instant case.