602 A.2d 871

**Reginald DOWNING and Billie Jean Downing, his Wife and Guardian, Appellee,**

v.

**HARLEYSVILLE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed Feb. 4, 1992.

16

18

William H. Pugh, IV, Norristown, for appellant.

Phillip H. Baer, Philadelphia, for appellee.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

DEL SOLE, Judge:

Harleysville Insurance Company, [Harleysville] appeals from an award of Summary Judgment entered in favor of Plaintiff–Appellees, Mr. and Mrs. Downing, in the amount of $90,000 plus interest. Harleysville challenges this award on the basis that it is premised on an improper conclusion that Mr. Downing was an "occupant" of the Harleysville vehicle and further that this award would wrongly allow the Downings to receive multiple coverage for first party benefits against two carriers of equal priority. Because this second issue called into question a review of the decision reached in *Manolakis v. Transamerica Insurance Company*, 396 Pa.Super. 256, 578 A.2d 503 (1990), alloc. granted, 526 Pa. 637, 584 A.2d 319 (1991), the parties were asked to argue the case before this en banc panel. Following argument and review of the record presented, we conclude that the trial court did err in determining that Mr. Downing was an occupant of the Harleysville vehicle. We, nevertheless, find that the Downings were properly awarded first party benefits against Harleysville under 75 Pa.C.S.A. § 1713(a)(4). Because we further hold that no other carrier involved in this matter was at the same or higher priority level as Harleysville, a discussion of the *Manolakis* decision is rendered unnecessary.

We begin our discussion with a brief recitation of the underlying facts. Mr. Downing, who neither owned a car nor lived with any relative who owned a car, was traveling as a passenger in a vehicle operated by Gerald W. Hartley which was insured by the Prudential Insurance Company [Prudential]. While proceeding on their journey, Mr. Hartley and Mr. Downing noticed a vehicle disabled by a flat tire

and they stopped to render assistance. The disabled vehicle was insured by Harleysville. Mr. Downing offered to change the tire on behalf of the operator of the disabled vehicle. While standing next to the side of the disabled vehicle holding the jack to change the tire, the vehicle and Mr. Downing were struck by a third vehicle operated by an uninsured motorist who was driving under the influence of alcohol. Mr. Downing suffered serious injuries causing him to remain in a comatose state since the accident and resulting in the amputation of his right leg. His medical expenses have been substantially in excess of $100,000.

In 1986 Mr. Downing and his wife and guardian, Billie Jean Downing, commenced a civil action against both Prudential and Harleysville for first party benefits. Prudential subsequently paid the Downings the maximum amount of its coverage, $10,000, plus interest and counsel fees and was dismissed from the action. (The Stipulation of Dismissal signed by the parties indicates the amount to be $9,300.) The Downings then filed a motion for Summary Judgment against Harleysville, which answered and filed a cross motion for Summary Judgment. The court granted the Downings' motion. Since the maximum coverage under the Harleysville policy was $100,000 and since the Downings already recovered $10,000 from Prudential, the court entered a Judgment for $90,000 representing the balance of the coverage available. The trial court reasoned that under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*, Mr. Downing was an "occupant" of both the Prudential vehicle in which he was traveling as a passenger and the disabled Harleysville vehicle to which he was providing assistance when the accident occurred. Based upon this finding the court ruled that the Downings were entitled to recover from both carriers who were at the same priority level. In reaching this conclusion the court rejected Harleysville's position that the court was permitting the "stacking" of coverage.

The provisions of the MVFRL address the sources of recovery and their respective priority levels in § 1713. In

determining Mr. Downing's relationship with the motor vehicles involved and the insurers, it is necessary to detail its provisions.

### § 1713. Source of benefits

**(a) General rule.**—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first party benefits against applicable insurance coverage in the following order of priority:

(1) For a named insured, the policy on which he is the named insured.

(2) For an insured, the policy covering the insured.

(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury.

75 Pa.C.S.A. § 1713

■ As stated, the trial court, when ruling on the Summary Judgment motion, determined that Mr. Downing was an "occupant" of both the Prudential vehicle and the Harleysville vehicle under § 1713(a)(3). We conclude that he could not be classified as an "occupant" of either vehicle; rather, the Downings may recover against Harleysville under § 1713(a)(4) because their injuries arose from "the maintenance or use" of the disabled Harleysville vehicle which was "involved in the accident."

Recovery under each of the priority levels outlined in § 1713 is premised on the occurrence of an injury which arises out of the "maintenance or use of a motor vehicle." *See* 75 Pa.C.S.A. § 1711, § 1712 and § 1713(a). For the injury to "arise" from such use it is further well established that there must be some causal connection between the

motor vehicle and the injury before the motor vehicle insurer is required to pay first party benefits. *Id.*

The scope of the term "occupant" was first addressed in *Tyler v. Insurance Company of North America,* 311 Pa.Super. 25, 29, 457 A.2d 95, 96 (1983) under Section 204 of the No–Fault Act, 40 P.S. § 1009.204 (repealed.) Therein the court was considering whether a person who had alighted from a vehicle remained an occupant of that vehicle. The court concluded:

> He continues to "occupy" the motor vehicle until he severs all connection with it. That point of severance is reached when he becomes highway oriented as opposed to being vehicle oriented. Until then, the alighting passenger continues to be an occupant of the [vehicle]. Until such a person is on his or her own without reference to the [vehicle], the person has not ceased to be a passenger or occupant.

*Id.,* 311 Pa.Superior Ct. at 31, 457 A.2d at 97.

Our supreme court subsequently in *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984) examined the term "occupying" in determining whether an individual who had alighted from a vehicle continued to occupy it. The individual in that case had been involved in a minor motor vehicle accident and, as a result, was standing approximately ninety-seven (97) feet from his vehicle giving information to a police officer when he was struck and killed by an uninsured motorist. The estate of the individual who was killed sought to establish that he continued to "occupy" the vehicle which he was operating prior to the accident. The policy in question defined the "occupying" to mean "in or upon or entering into or alighting from." In reaching the conclusion that the estate was entitled to recovery since the deceased party would be considered to be "occupying" the vehicle at the time of the accident, the court set forth the following criteria, which it found were met:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.*, 504 Pa. at 335, 473 A.2d at 1009.

Guided by these principles, we conclude that Mr. Downing had not remained an "occupant" of the Prudential vehicle in which he was traveling as a passenger prior to the accident.

Mr. Downing's continued relationship with the Prudential vehicle is strikingly similar to the situation which existed between an injured party and a Cadillac automobile in *Aetna Cas. & Sur. Co. v. Kemper Ins. Co.*, 657 F.Supp. 213 (E.D.Pa.1987). Therein an individual named Kendricks was a passenger in a Cadillac automobile insured by Aetna Casualty and Surety Company. The driver of the Cadillac, Smith, stopped along side the road to help a friend whose pick-up truck had become disabled. While Smith looked under the hood of the pick-up and Kendricks stood nearby, both were injured when a tractor-trailer hit the rear of the truck. In considering Pennsylvania No–Fault Act and its provisions relating to priority payments, the court had to determine whether Kendricks remained an "occupant" of the Cadillac at the time of the accident such that Aetna would be responsible for payment of his claims. The court examined the four criteria set forth in *Contrisciane, supra,* and stated:

Smith and Kendricks became "highway-oriented" when they left the Cadillac for the purpose of helping Perry with his pick-up truck. Moreover, their actions were not essential to the use of the Cadillac. Unlike the situation in *Contrisciane,* where the person had to go to the police car before he could continue using his car, the actions of Smith and Kendricks were completely unrelated to the continued use of the Cadillac.

657 F.Supp. at 215.

The court concluded that neither Kendricks nor Smith were "occupants" of the Cadillac at the time of the accident.

■ We find the rationale expressed in the *Aetna* decision particularly pertinent. Mr. Downing's relation to the Prudential vehicle, which he had exited at the time of the accident to come to the aid of a disabled vehicle, was not as an "occupant." The relationship between Mr. Downing and the Prudential vehicle fails to meet at least three of the four criteria espoused in *Contrisciane*. Mr. Downing's injuries were not causally connected to the use of the Prudential vehicle, rather they occurred when he was struck by some third party while aiding another motorist with her disabled vehicle. Likewise, Mr. Downing was not oriented to the Prudential vehicle at the time of the accident. We adopt the conclusion reached in *Aetna* and find that Mr. Downing "became 'highway-oriented' when he left the [Prudential vehicle] for the purpose of helping [the stranded motorist] with [her] [disabled vehicle]." *Id.* Finally, Mr. Downing was not engaging in a transaction essential to the use of the Prudential vehicle at the time of the accident. In fact, Mr. Downing's actions prior to the accident did not in any manner involve the Prudential vehicle. For these reasons we conclude that Mr. Downing was not an "occupant" of the the vehicle insured by Prudential at the time of the accident.

■ From the facts of this case, we also rule that Prudential was not responsible to the Downings under subsection (4) of § 1713(a). This subsection concerns a person who suffers injury arising out of the maintenance or use of a motor vehicle which is involved in an accident but who was not an "occupant" of the motor vehicle. Subsection (4) defines a "parked and unoccupied motor vehicle" as one involved in an accident only if it was parked "so as to cause unreasonable risk of injury." 75 Pa.C.S.A. § 1713(a)(4). The facts clearly show that the Prudential vehicle was not "involved" in the accident. Further, there is nothing in the record, nor do any parties suggest, that the Prudential

vehicle was parked "so as to cause an unreasonable risk of injury." Thus, under the terms of the MVFRL, Prudential was not responsible for the payment of benefits to the Downings.

We turn now to an examination of Harleysville's responsibilities to the Downings. The trial court found that Mr. Downing was in the status of an "occupant" of the disabled vehicle at the time of the accident. In reaching this conclusion the court examined the four criteria set forth in *Contriscaine* and found that they each had been met. It reasoned that since there was a causal relation between the injuries and the use of the disabled vehicle, since Mr. Downing was reasonably close to the disabled vehicle at the time he was injured, and since he was oriented to the vehicle and was engaged in a transaction which can be said to be essential to the use of the vehicle (changing a flat tire), Mr. Downing was "occupying" the disabled vehicle at the time of the accident. The trial court's conclusion must fail because it ignores a prerequisite to the application of the four criteria announced in *Contrisciane*.

█ In defining the term "occupant" in *Contrisciane* and its predecessor *Tyler, supra.,* the courts were considering whether a person who had alighted from a vehicle remained an occupant of that vehicle. In such a situation *Contrisciane* directs that the four criteria it sets forth are to be utilized to determine whether the injured party should be entitled to recover as an "occupant" of the vehicle. In both *Tyler* and *Contrisciane* the injured party had been traveling in the vehicle prior to the accident and the court was considering the injured parties' continued relationship with that vehicle. The *Contrisciane* criteria were also utilized to determine if the injured party continued to hold the status of "occupant" in *Shultz v. Nationwide Insurance Company,* 373 Pa.Super. 429, 541 A.2d 391 (1988) (where a woman, who had been traveling in a vehicle which ran out of gasoline and who was putting gasoline into her vehicle, was injured when a passing car struck the vehicle behind her vehicle causing her to be pinned between the two); and

*McGilley v. Chubb & Son, Inc.*, 369 Pa.Super. 547, 535 A.2d 1070 (1987), (where a taxi driver who had exited his vehicle to "bum" a cigarette from another taxi driver was struck by a passing bus.)

 In this case, Mr. Downing had not alighted from the disabled vehicle; he had never been inside the disabled car and there is nothing to indicate that he ever even intended to enter the disabled car. Mr. Downing's relationship with the disabled vehicle here is identical to Kendricks' relationship to the disabled pick-up truck in *Aetna, supra*. Therein, any claim that Kendricks was an occupant of the pick-up truck at the time of the accident was summarily dismissed. The court simply stated, "Clearly, this argument has no merit." We likewise find no merit to the position that Mr. Downing was an occupant of the disabled vehicle which he was aiding at the time of the accident.

Although Mr. Downing cannot be considered to have been in the status of an "occupant" at the time of the accident, we nevertheless find Harleysville, as the insurer of a vehicle involved in the accident, to be responsible for the payment of first party benefits under 75 Pa.C.S.A. § 1713(a)(4).

Section 1713(a)(4) refers to coverage "for a person who is not the occupant of a motor vehicle" regarding first party benefits to be paid by an insurer which has provided a "policy on any motor vehicle involved in the accident." In construing these same terms under the No–Fault Act "the court has said, 'subparagraph (4) should be interpreted as written, and to apply to an uninsured claimant who was not an occupant of a car; namely, a pedestrian or bystander.' " *Shultz v. Nationwide Ins. Co., supra* 373 Pa.Super. at 434, 541 A.2d at 393 *citing Schimmelbusch v. Royal–Globe Ins. Co.*, 247 Pa.Super. 28, 371 A.2d 1021 (1977). Subparagraph (4) sets forth one exception and dictates that a "parked and unoccupied" motor vehicle is not one "involved in an accident unless it was parked so as to cause unreasonable risk of injury." 75 Pa.C.S.A. § 1713(a)(4).

■ We conclude, in this case, that the disabled vehicle was not a "parked vehicle" so the exception and a determination as to the manner in which it was "parked" is irrelevant and unnecessary. *Aetna Cas. & Sur. Co. v. Kemper,* *supra,* 657 F.Supp. at 214 ftn. 1. We further conclude that the disabled vehicle was clearly a vehicle "involved in the accident." Mr. Downing was standing next to the disabled vehicle holding an instrument to change the tire of the vehicle when a passing car struck both the vehicle and Mr. Downing. Thus, Harleysville was responsible for the payment of first party benefits to the Downings under the provisions of 75 Pa.C.S.A. § 1713(a)(4).

Although subsection (a)(4), which we find applicable to Harleysville, is the last in the order of priority to provide a source of benefits, because we have also determined that Prudential was not at the same or higher priority level as Harleysville under 75 Pa.C.S.A. § 1713, questions concerning the "stacking" or receipt of multiple benefits are irrelevant to this matter and will not be discussed.[1] The trial court's award of Summary Judgment in favor of the Downings and against Harleysville is affirmed based upon Harleysville's responsibility under § 1713(a)(4).

JOHNSON, J., files a concurring opinion in which TAMILIA, J., joins.

JOHNSON, Judge, concurring:

I concur in my colleagues' conclusion that the trial court properly granted Summary Judgment in favor of Mr. and Mrs. Downing. I am not able to conclude, however, as does the majority, that no other carrier was at the same priority level under 75 Pa.C.S. § 1713(a) as Harleysville. Rather, in my view, the stipulated facts lead only to the conclusion that Prudential could not have had a *higher* priority level under § 1713(a) than Prudential. Because I do not consider *Manolakis v. Transamerica Insurance Company,* 396

---

1. We note that Prudential is not a party to this appeal and that the Downings have not challenged the amount of their award against Harleysville.

Pa.Super. 256, 578 A.2d 503 (1990), *alloc. granted,* 526 Pa. 637, 584 A.2d 319 (1991) to be controlling under the facts before us, I would hold that the Downings were entitled to coverage by Harleysville despite having exhausted the limits of the coverage provided by Prudential. Accordingly, I concur only in the majority's result.

Under the stipulated facts of this case, I agree with the majority's conclusions that Downing cannot be considered to be an "occupant" of the Harleysville vehicle, and that Harleysville falls within the fourth level of § 1713(a). I also agree that Prudential is not an insurer at the third level of priority within § 1713(a) because Downing cannot be considered to be an "occupant" of the Prudential vehicle once he left that vehicle to undertake business unrelated to its use and maintenance.

I am unable to conclude from the stipulated facts, however, that the Prudential vehicle was not within the priority level defined by § 1713(a)(4). Gerald Hartley testified in his deposition that, following the accident, Downing was found *underneath* the Prudential vehicle. Counsel for both parties stipulated to the accuracy of this testimony. Nothing in the record leads me to conclude that Downing did not strike the Prudential vehicle, thereby involving it in the accident; consequently, I am unable to join the majority's *holding* that that Prudential vehicle was not "involved in the accident" so as to place Prudential within § 1713(a)(4). Instead, I consider whether the recovery Downing seeks is allowable *regardless* of whether Prudential, having paid the limits of its liability, was within § 1713(a)(4). For the reasons which follow, I conclude that such recovery was not precluded.

First party benefits may not be increased by stacking the limits of coverage of multiple motor vehicle policies covering an individual for the same loss. 75 Pa.C.S. § 1717(2). In *Laguna v. Erie Insurance Group,* 370 Pa.Super. 308, 536 A.2d 419 (1988), a panel of this court held that § 1717(2) precludes recovery of first-party benefits from an insurer

once first-party benefits have been paid by an insurer of a higher priority under § 1713.

In *Manolakis,* a claimant sought first-party medical benefits from Transamerica Insurance Company, which denied the claim because Allstate Insurance Company, an insurer at the same level of priority under § 1713, had already paid the limits of its coverage. Transamerica contended that payment of additional benefits would constitute stacking, which was prohibited under § 1717(2). Allstate had paid the claimant its policy limits of $10,000 in medical coverage and $50,000 in income loss coverage. Manolakis sought further recovery of medical expenses under the Transamerica policy which provided coverage for $100,000 for medical expenses and $15,000 for loss of income. The *Manolakis* court held that recovery of the medical benefits sought would constitute stacking and was thus prohibited by § 1717(2).

I do not, however, find *Manolakis* controlling because the claimant there sought total benefits *in excess of the coverage provided by either policy.* Here, the Prudential policy provided a $10,000 limit for recovery of first-party benefits, which Downing recovered. The Harleysville policy limits first-party benefits to $100,000; however, Downing sought only $90,000 in first-party benefits. Therefore, the total recovery sought by Downing is within the limits of one of the applicable policies. I would affirm the order of the trial court because I do not perceive such a recovery to constitute stacking.

Moreover, the Legislature has provided for recovery from multiple carriers within § 1713(b), which states:

(b) **Multiple sources of equal priority.**—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers

responsible under subsection (a)(4), proration shall be based on the number of involved motor vehicles.

Accordingly, I conclude that the trial court has properly granted Downing's motion for summary judgment, and I concur in the majority's result.

TAMILIA, J., joins.