L.S., A Minor by A.S., Natural Parent/Guardian, Appellants,

v.

David ESCHBACH, Jr., Inc. and Brenda Lowery

v.

Wilmer C. Hosler and Donald M. Shellenberger.

Superior Court of Pennsylvania.

Argued Dec. 10, 2002.
Filed March 28, 2003.
Reargument Denied May 30, 2003.

Richard C. Low, Lancaster, for appellants.

C. Roy Weidner, Jr., Lemoyne, for Eschbach, appellee.

BEFORE: JOHNSON, KLEIN and GRACI, JJ.

OPINION BY KLEIN, J.:

¶ 1 L.S., a minor, by A.S., her natural parent and guardian appeals from the order granting summary judgment in favor of defendants on the issue of the application of the limited tort option to L.S. The trial court determined that L.S. was bound by the limited tort option and further determined that her injuries did not, as a matter of law, constitute a "serious injury" under the applicable statute, thereby leaving her without a viable cause of action.

Upon review of the record, all briefs [1] and because we find the statutory language to be clear, we affirm.

¶ 2 L.S. was a seventh grade student at the time of this accident. She lived with her mother, A.S. On October 2, 1997, she got off her school bus and walked down the sidewalk, intending to cross the street at an intersection. As she attempted to cross the street, a passing automobile struck her. She sustained multiple abrasions and contusions, a right orbital hematoma with fracture, a non-displaced fracture of her right proximal humerus and a slightly angulated fracture of the left distal radius. Her prognosis for recovery from these injuries, as reported by her physician, was excellent. L.S. agrees that these injuries are not "serious injuries" as defined in 75 Pa.C.S. § 1702 and are not at issue here. A.S. is the owner of a registered, insured vehicle. A.S. opted for limited tort coverage. There is no challenge to the validity of this election. This vehicle is the only vehicle in the S. household.

¶ 3 After the close of relevant discovery, the parties filed cross-motions for summary judgment on the issue of the application of the limited tort option. The trial court ruled that L.S. was bound by her mother's election of limited tort, and as it had been agreed that her injuries did not rise to the level of serious injury, and as there were no outstanding economic damages, L.S. had not suffered a compensable injury and the court dismissed the action.

¶ 4 L.S. now claims the trial court erred for three reasons. First, application of the limited tort option was incorrect as L.S. was still considered to be an "occupant" of the school bus, and thus outside the purview of the statute. Second, L.S. sued only the school bus company and school bus driver basing those claims on the alleged negligence of the driver for failing to comply with applicable unloading procedures. Thus, L.S.'s injuries were not the result of a motor vehicle accident and so, once again outside the scope of the statute. Finally, and in the alternative, if L.S. was not an occupant of the school bus at the time of the accident, she was a pedestrian and so was outside the scope of the law. This final issue represents an issue of first impression. The application of limited tort to a pedestrian has not been addressed by any Pennsylvania appellate court. We will address the final issue first.

## I. Limited tort applies to pedestrians.

¶ 5 L.S. raises the issue as to whether the "limited tort" option applies when the person injured is a pedestrian rather than a driver.[2] We agree with the holding in *Henrich v. Harleysville Ins. Cos.*, 403 Pa.Super. 98, 588 A.2d 50 (1991), *aff'd on other grounds*, 533 Pa. 181, 620 A.2d 1122 (1993), which essentially provides that if the legislature is to take away a person's right to recover full damages from a tortfeasor, it must do so clearly. However, looking at the statutory lan-

---

1. Additional defendants/appellees Hosker and Shellenberger did not take part in this appeal. The claim against Shellenberger was settled and Shellenberger released. Claims against Hosler were discontinued. The Pennsylvania Trial Lawyers Association (PaTLA) has filed an *amicus curiae* brief for the appellant.

2. L.S. and PaTLA refer us to the specific rationale used in *Andreyo v. Radle,* 121 Dauphin County 167, 59 Pa. D. & C.4th 8, 2002 WL 32003974 (C.P.Dauphin County 2002), on

this issue. The dissent also refers to the analysis used in that decision, properly noting that a common pleas court decision is in no way binding upon our Court. As *Andreyo* is currently on appeal, we do not feel it would be proper to comment directly upon that case, the specific facts of which are not before this panel. Of course, as certain issues are, at least, similar, we must address the arguments that have been placed before us.

guage in this circumstance, we believe the legislature was clear that the "named insured" who elects limited tort cannot recover noneconomic damages when involved in a motor vehicle accident, whether as a driver, a passenger in someone else's car, or as a pedestrian. This also applies to other "insureds" under the policy, which would include a minor child living with the named insured, such as L.S. in this case.

¶ 6 One looks first to the language of 75 Pa.C.S. § 1705(d), which states:

(d) Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss *sustained in a motor vehicle accident* as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election *shall be precluded from maintaining an action for any noneconomic loss* ... (emphasis added).

The section then spells out several exceptions. However, there is no exception for being a pedestrian at the time of the accident.

¶ 7 Reading those words in the instant context, section (d) provides that anyone bound by limited tort "shall be precluded from maintaining any action for noneconomic loss" "sustained in a motor vehicle accident." Here, while letting the child out in the wrong location may have contributed to the total circumstances, the child had injuries "sustained in a motor vehicle accident" so can only recover for economic loss.

¶ 8 L.S. argues that, as she was a pedestrian at the time of the accident, under the language of the relevant statute, the limited tort election does not apply to her. This argument is based primarily upon the language found in 75 Pa.C.S.

§§ 1705(a)(1) and (b)(2) and also upon public policy reasons.

¶ 9 We will first examine the language cited by L.S. and by PaTLA in their briefs. Section 1705(a)(1) states in relevant part:

"Limited Tort" Option—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by *other drivers.* Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries fall within the definition of "serious injury" as set forth in the policy.... (emphasis added.)

Section 1705(b)(2) states in relevant part:

In the case where more than one private passenger motor vehicle policy is applicable to an insured and the policies have conflicting tort options, the insured is bound by the tort option of the policy associated with the private passenger motor vehicle *in which the insured is an occupant* at the time of the accident if he is an insured on that policy and bound by the full tort option otherwise. (emphasis added.)

¶ 10 L.S. claims that these cited provisions and the emphasized language indicate the clear intent of the legislature that: 1) in the case of section 1705(a)(1) there must be multiple drivers in order to apply the limited tort election, and 2) in the case of section 1705(b)(2) tort election only applies when the injured party is an occupant of a motor vehicle. Together, L.S. claims, these sections illustrate the legislative intent that limited tort does not apply to a pedestrian. Specifically applied to this case, those sections indicate that since L.S.

was injured in a single car accident, section 1705(a)(1) prevents application of the limited tort election, and since L.S. was not an occupant of a vehicle at the time of the accident, section 1705(b)(2) prevents application of the limited tort election. To hold otherwise, it is argued, is to improperly ignore the specific statutory language.

¶ 11 First, we agree that we are bound by the statutory language. However, the language cited by L.S. does not require that we exempt pedestrians from application of the limited tort election. In the first instance, L.S. claims that the use of the words "other drivers" means the statute only contemplates application of tort election where there is more than one driver involved in an accident. We do not believe that this language means there must be a multi-vehicle accident. We cite two examples that demonstrate the soundness of our conclusion.

¶ 12 Example 1: A pedestrian is injured as a result of the negligence of two drivers. One was speeding and the other made an improper left hand turn. The speeding driver, unable to stop in time swerves to avoid collision and strikes the pedestrian. Two drivers, as required by L.S.'s postulation, are now responsible. Under L.S.'s theory, if the pedestrian were otherwise bound by limited tort, that election would apply. Yet, had the pedestrian been injured by a single negligent driver, it would not. There is no cogent reason for this outcome.

¶ 13 Example 2: A household member is a passenger in the family car, which is covered by limited tort. The driver of that car negligently loses control of the vehicle and it strikes a telephone pole. The passenger is injured. The passenger is legally entitled to seek compensation from the driver under the liability portion of their shared insurance coverage. Once again, under the proposed L.S. rule, the passenger would not be bound by the otherwise valid limited tort election simply because there were no "other drivers" involved in the accident. Once again, there is no cogent reason for this outcome.

¶ 14 Both of these examples create absurd results. We cannot presume the legislature intended such results and cannot interpret a statute to require them. 1 Pa.C.S. § 1922(1). Yet, if we were to accept L.S.'s argument that the law requires "other drivers" to mean more than one driver involved in an accident, then both examples would be the required outcome. Thus, we cannot accept the argument that the legislature's use of the words "other drivers" means there must be more than one driver. Rather, we accept a straightforward interpretation of those words to mean that a driver other than the injured person be involved. *Commonwealth v. Allied Bldg. Credits, Inc.,* 385 Pa. 370, 123 A.2d 686 (1956) (statutes should receive sensible construction and should be construed if possible that absurdity and mischief be avoided). This interpretation of "other drivers" therefore allows for the application of the limited tort election to pedestrians.

¶ 15 Moreover, section 1705(a)(1) does not spell out rights and limitations, but merely tries to translate the act into plain English for purposes of the notice. Because the notice contained in this section is designed to go to the insured, the term "other drivers" means drivers other than the insured. In lay terms, that is to distinguish it from first party benefits to which the insured may be entitled if the insured is the person who caused the accident. It does not mean that the insured must be driving a car before the provision becomes applicable.

¶ 16 We also believe our interpretation of "other drivers" is supported by the language of sections 1705(c) and (d).

(c) Full tort alternative. Each person who is bound by the full tort election remains eligible to seek compensation for noneconomic loss claimed and economic loss sustained in a *motor vehicle accident* as the consequence of the fault of another person pursuant to applicable tort law.

(d) Limited Tort alternative. Each person who elects that limited tort alternative remains eligible to seek compensation for economic loss sustained in a *motor vehicle accident* as the consequence of the fault of another person pursuant to applicable tort law.

75 Pa.C.S. § 1705(c) and (d) (emphasis added).

¶ 17 The legislature has clearly indicated that tort election applies to people who have been involved in a motor vehicle accident. A motor vehicle accident may involve two vehicles, twelve or *one*. The legislature did not state that tort election applied only where more than vehicle was involved; it stated that tort election binds the elector when involved in a motor vehicle accident. This is broad and simple language that means just what it says. Tort application applies when the claimant is involved in a motor vehicle accident. To limit the application of tort election to accidents involving more than one driver is to impermissibly rewrite the statute. *See* 1 Pa.C.S. § 1921(b).

■ ¶ 18 Next, L.S. claims the legislature's use of the words "in which the insured is an occupant"[3] must be interpreted to mean that an injured person must be an occupant of a vehicle at the time of injury for tort election to apply. We note that the language cited for this proposition is found in the section of the law explaining the application of tort election where more than one policy applies to an injured person. It is not a section explaining application of the law in general. The cited language provides that where more than one policy applies to an individual, then if that person is occupying the vehicle specifically covered by the limited tort election, then the limited tort election applies. Otherwise, the full tort election applies.

¶ 19 This language, in spite of the assertion to the contrary, would not render the application of tort law a mass of confusion if limited tort were applied to pedestrians. Take the example of a pedestrian who is validly covered by multiple insurance policies with conflicting tort elections. This pedestrian is then struck by a passing motorist. The statute provides that if the injured person is the occupant of a vehicle covered by limited tort, then the limited tort election applies. If the injured person is not the occupant of the limited tort vehicle, then coverage defaults to full tort. Since in no instance is a pedestrian the occupant of a vehicle (limited tort or otherwise), where *conflicting* tort options apply, the coverage will always default to full tort. This interpretation provides no more confusion that any other tort election analysis.

¶ 20 Here, L.S. was not subject to conflicting tort options. She belonged to a household that was covered by a single policy of automobile insurance. That insurance policy contained the election of the limited tort option. Thus, the language cited in section 1705(b)(2) is not even applicable to the current situation. However, as analyzed above, even if it were, the interpretation of that language evidences no clear legislative preference for the application of tort options solely to those people who are occupants of a vehicle when injured.

---

**3.** 75 Pa.C.S. § 1705(b)(2)

¶ 21 Finally, L.S. argues public policy reasons for determining that tort election does not apply to pedestrians. L.S. states that it would be "draconian" to "punish" a pedestrian by imposing the limited tort option. We begin by noting that the oft-cited rationale of "draconian punishment" is in this instance neither. Rather, the imposition of limited tort is contractual and statutory. In language cited by L.S. herself, the election of limited tort is a contractual choice.

> The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers.

75 Pa.C.S. § 1705(a)(1). The legislature has specifically provided for this option. The law specifically informs the insured that certain rights to seek non-economic damages are not only given up by the named insured but are relinquished on behalf of other household members as well. One may always challenge the wisdom of any law. The citizens of the Commonwealth of Pennsylvania and any interest group so inclined may seek to change the law. The fact remains that tort election is the current law.

¶ 22 L.S. also indicates that there would be no furtherance of the policy goals of the Motor Vehicle Financial Responsibility Law (MVFRL) by applying limited tort to a pedestrian. This argument might carry weight if it had been demonstrated that the parties were not affected by the MVFRL. This has not been demonstrated or even argued. The policy argument put forth by L.S. is that there is no reason to apply the tort election where the accident had no connection to the insured vehicle. (Appellant brief at 14.) This ignores the clear language of section 1705(b)(2), which states: "The tort option elected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy." The exception to this is where a person is covered by more than one policy with conflicting options. Thus, the person is bound by his own limited tort election even if he is a passenger in someone else's vehicle, regardless of that person's tort election. The tort election therefore can be said to follow the insured.[4] As the election follows the insured when he is injured while a passenger in a friend's car, there is no reason for that election not to follow a person when he is injured as a pedestrian.

¶ 23 One of the major goals of the MVFRL was to help provide insurance relief to the citizens of this Commonwealth. It allowed citizens the option of paying a lower premium, making the required insurance more affordable. It did this by limiting the recovery made by those who opted for the lower premium. The theory is that the lower premiums would be supported by lower claim amounts allowed. As all insurers are required to offer the lower premium, it is assumed that the claims made against various policies would even out. Thus, one time a person insured by Company "A" makes a limited tort claim against a person insured by Company "B." The next time, however, a Company "B" insured may make the claim against a Company "A" insured—thus balancing the books. The

---

4. We note that often a mere passenger in a car is deemed an "insured" under the policy covering that vehicle. Thus, a passenger may be entitled to collect certain benefits under that policy. However, section 1705 specifically takes this definition of an insured away in the application of tort election. The definition of an insured under section 1705 is either the named insured of a policy or a household member, not simply a passenger in a vehicle.

application of tort election to a pedestrian involved in a motor vehicle accident is not contrary to this theory and in fact helps support the goals of the MVFRL.

¶ 24 Further, section 1705(d) lists specific exceptions to the application of limited tort. One exception is for a person who is the occupant of a motor vehicle other than a private passenger motor vehicle, *e.g.*, a school bus. Thus, the legislature has contemplated exceptions to the application of tort election and has specifically determined that the occupant of a school bus is exempt from the limited tort election. However, having considered buses, the legislature did not exempt a person who was otherwise injured through the alleged negligence of such a vehicle. The legislature has also provided an exception to tort election where a claim is brought against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect of one of those vehicles which was caused by the negligence of the business. *See* Section 1705(d)(2). Thus, the legislature has also considered instances where a business entity is at fault and provided an exception. This exception does not apply to bus companies operating as bus companies.[5] We cannot ignore the fact that the legislature has specifically provided for certain exceptions to the application of tort election and has not included the present situation in those exceptions.

## II. L.S. was not an occupant of the school bus.

■ ¶ 25 Title 75 Pa.C.S. § 1705(d)(3) (exceptions to limited tort) states in pertinent part:

An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an *occupant* of a

motor vehicle *other than a private passenger motor vehicle.* (Emphasis added.)

It is uncontested that the school bus in question did not meet the statutory definition of a private passenger motor vehicle. Therefore, if L.S. is deemed to be an occupant of the school bus, she would retain full tort status under section 1705(d)(3).

¶ 26 L.S. relies largely upon *Tyler v. Insurance Co. of North America,* 311 Pa.Super. 25, 457 A.2d 95 (1983), to support her contention that she was still an occupant of the school bus at the time of her injury. We find that this reliance is misplaced. In *Tyler,* the plaintiff was similarly struck by a passing vehicle (a motorcycle) after alighting from a bus. Our Court determined that the bus company had a duty not only to transport the plaintiff safely, but also to afford her an opportunity to alight safely. We found that Tyler continued to occupy the bus after alighting because she had not yet severed all connection with the bus by alighting *safely.*

¶ 27 At first blush, *Tyler* would appear to be controlling. However, there are several distinguishing features between that case and the factual scenario presented here. In *Tyler,* the bus stopped some five feet from the curbside, forcing Tyler to walk in the roadway before safely reaching the sidewalk. This five-foot distance allowed space for the offending motorcycle to attempt to pass the bus on the right, thus striking Tyler. Here, there is no question that L.S. had reached the sidewalk safely. She not only reached the sidewalk, but also had walked a substantial distance from the bus stop to the intersection before attempting to cross the street.

---

**5.** It may well apply to a bus company that has negligently maintained its vehicle so that a

defect of that vehicle was the cause of injury. That factual scenario is not before us.

Factually, the two cases are not similar enough to require the same outcome.

■ ¶ 28 Additionally, and more importantly, one year after the *Tyler* decision was announced, the Supreme Court issued its opinion in *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). The Supreme Court in *Utica* announced a four-part test to determine the occupancy of a vehicle. The four elements to be weighed in determining occupancy are:

1) whether there is a causal relation or connection between the use of the vehicle and the injury; 2) the person asserting coverage must be in reasonably close proximity to the insured vehicle, although the person need not be actually touching the vehicle; 3) the person asserting coverage must be vehicle oriented rather than highway or sidewalk oriented; and 4) the person must be engaged in a transaction essential to the use of the vehicle at the time of injury.

*Id.* at 1009. In *Tyler,* our Court merely determined that the plaintiff had not yet severed all ties with the bus and therefore was still an occupant. Our Court did not, and was not required to, make any determination beyond that. Thus, at most, *Tyler* might be said to address the first element of the *Utica* test. Tyler does not address any of the other elements. Since we are required to address all elements set forth in *Utica,* we cannot rely upon *Tyler* for a determinative outcome.

■ ¶ 29 To a lesser extent, L.S. relies upon the decision in *Lebanon Coach v. Carolina Casualty Insurance Co.,* 450 Pa.Super. 1, 675 A.2d 279 (1996), to show occupancy. Like *Tyler, Lebanon* is neither instructive nor applicable upon this case. In *Lebanon,* our Court was called on to decide whether the school bus insurer was obligated to defend in an action where the student passenger had alighted from the school bus and had been struck by another vehicle as she crossed the street. The issue in *Lebanon* was whether this represented "ownership, maintenance or use" of the school bus, not whether the student was still an occupant. In fact, we stated: "[A]ssuming, without deciding, that she was no longer an occupant of the bus, Miss Lehman's injuries were nevertheless sustained as a result of the "use" of the COLT-owned bus." *Id.* at 289. If anything, *Lebanon* stands for the proposition that L.S. was no longer an occupant of the school bus. However, if *Lebanon* is relevant to any issue, it is again to prove the first element of the *Utica* test regarding the use of the bus. "[W]e have interpreted the phrase "use of a motor vehicle" to mean the use of a motor vehicle *as a vehicle,* including, incident to its use as a vehicle, occupying, entering into, or alighting therefrom." *Id.* at 290. The first element of the *Utica* test appears to be well settled in favor of L.S., based upon the above-cited cases.

■ ¶ 30 Where L.S. fails to prove occupancy is under the third and fourth elements: the person asserting coverage must be vehicle oriented rather than sidewalk oriented at the time and the person must be engaged in a transaction essential to the use of the vehicle at the time of the injury. There is no contention by L.S., or by PaTLA, that L.S. was anything other than sidewalk oriented at the time she suffered her injuries. She had walked away from the bus and was in the process of attempting to cross the street when struck. L.S. had passed at least one and perhaps two or three other buses on her way to the corner. (Deposition of L.S., 8/22/01, at 8). Moreover, she had been safely on the sidewalk for a couple of minutes before walking to the corner. (Deposition of Lowery, 4/13/00, at 52). In general, case law requires a person who is

not actually in the vehicle to be in the process of entering or exiting that vehicle to be considered vehicle oriented. *See generally Lucas–Raso v. American Mfrs. Ins. Co.*, 441 Pa.Super. 161, 657 A.2d 1 (1995). She was not vehicle oriented at the time.

¶ 31 L.S. makes no argument that she was engaged in a transaction essential to the use of the bus at the time she was injured. We are unable to locate any case law that would tend to indicate that a person who has traveled a substantial distance from the vehicle in question and is crossing the street, not to enter the bus, but having left it, is engaged in a transaction essential to the use of the bus. In *Downing v. Harleysville Insurance Co.*, 412 Pa.Super. 15, 602 A.2d 871 (1992), a person who had left his vehicle and was on the side of the road attempting to aid a stranded motorist was not the occupant of his own vehicle. He was neither vehicle oriented as to his own vehicle nor was he performing a task essential to his own vehicle's use. In *Frain v. Keystone Insurance Co.*, 433 Pa.Super. 462, 640 A.2d 1352 (1994), the injured party was fleeing the "occupied" vehicle when struck. However, Frain had already opened the car door and placed her purse in the car in direct preparation to entering the car when she was forced to flee from an out of control vehicle for her own safety. The act of entering the vehicle was deemed essential to its use. Here, L.S. had safely exited the bus, was safely on the sidewalk for a couple of minutes, and had walked multiple bus lengths from her bus before she even attempted to cross the street. Had L.S. been struck as she alighted from the bus, as was the case in *Tyler*, we could determine the act of alighting is as essential to the use of the vehicle as is the act of entering the vehicle. L.S. was too far removed from alighting to be considered as acting in a manner essential to the use of the bus. Therefore, L.S. cannot meet the fourth element of Utica either.

¶ 32 As *Utica* requires all four elements be met to find occupancy and L.S. cannot meet either the third or fourth element, L.S. cannot be deemed to have been an occupant of the bus.

## III. The accident was a motor vehicle accident.

¶ 33 L.S. claims that as she has sued only the bus company and the driver of the bus, claiming negligence in failing to follow proper unloading procedures, she was not involved in a motor vehicle accident and so the limited tort election is irrelevant.

¶ 34 We begin by noting that had all events transpired just as they did, except that had L.S. made it across the street safely, the bus company and driver would still have been arguably negligent in not following discharge procedures, but no lawsuit would have been filed, as no injury would have occurred. The injury was caused, in a factual sense, by L.S. being struck by the passing motorist. We emphasize that this does not mean that the bus company and driver shoulder absolutely no responsibility for the accident. Their alleged negligence might well have been determined to be a cause in fact of the injury. It simply means that L.S.'s argument on this point fails as the injuries were undisputedly caused by L.S. being hit by a motor vehicle.

¶ 35 While the negligence charged against the bus company and driver may have been a significant factor in causing injury to L.S., the actual physical cause of injury was a motor vehicle accident. There is no dispute to this fact. Bringing a lawsuit against the bus company and driver alone does not and cannot alter this fact. Additionally, if we were to agree with this argument, we believe that it

would result in mischief uncontemplated by the statutes. A party could settle with a driver who had only minimum insurance and then fashion an argument against another alleged tortfeasor, not a driver, simply to avoid the imposition of a legitimately elected limited tort option. The statutes were not designed with these manipulations in mind.[6]

¶ 36 While our Supreme Court has instructed us to apply full tort coverage where there is doubt, to ignore the specifics of the law would be to impermissibly rewrite the statutes in the guise of following the "spirit" of the law. 1 Pa.C.S. § 1921(b).

¶ 37 For the foregoing reasons, we must affirm the order of the trial court.

¶ 38 Order affirmed.

¶ 39 JOHNSON, J., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY JOHNSON, J.:

¶ 1 In this case, the Majority concludes that L.S. was not an occupant of the school bus at the time of the accident, that the accident was a motor vehicle accident and that L.S.'s rights of recovery are limited by her mother's limited tort automobile insurance policy.

¶ 2 I concur in the Majority's conclusion that L.S. was not an occupant of the school bus. The Majority correctly states that L.S. can establish neither that she was vehicle oriented rather than highway-or-sidewalk oriented nor that she was engaged in a transaction essential to the use of the vehicle at the time of injury, which are the last two elements of the four-part test the Supreme Court established in *Uti-*

*ca Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). Therefore, L.S. was not an occupant of the school bus.

¶ 3 I also concur in the Majority's conclusion that the accident was a motor vehicle accident. However, I do not agree that a motor vehicle accident falls within the purview of the Motor Vehicle Financial Responsibility Law when a pedestrian is struck down in traffic. In my view, the MVFRL does not implicate pedestrians.

¶ 4 The record establishes that on October 2, 1997, after alighting from her school bus and attempting to cross the street behind several school buses, which were in line behind her bus, L.S. was struck and injured by a car driven by William C. Hosler. L.S. commenced a suit against Brenda Lowery, who was the driver of the school bus, and David Eschbach, Jr., who owned the bus company, alleging that they were negligent for not following the proper unloading procedures. Thereafter, Lowery and Eschbach joined Hosler and Donald M. Shellenberger, who was the driver of the vehicle which allowed L.S. to cross in front of his vehicle and into the path of Hosler's vehicle. L.S. filed a Stipulation of Discontinuance as to Hosler and entered into a joint tortfeasor release with Shellenberger. Thus, this appeal pertains to L.S.'s negligence claims against Lowery and Eschbach.

¶ 5 I must respectfully dissent from the Majority's conclusion that 75 Pa.C.S. section 1705 must be applied to pedestrians. The threshold issue before this Court is whether a pedestrian, in this case a minor, who is injured through the negligence of a motor vehicle operator is limited in her recovery by her mother's election of the "Limited Tort Option" in the mother's automobile insurance policy. Upon review, I

---

6. We emphasize that we are not implying or accusing L.S. of any such manipulation. We are simply noting possible and likely future scenarios which would result in the manipulation of the law.

conclude that section 1705 is inapplicable to pedestrians.

¶ 6 In this case, we are called upon to interpret section 1705(a) of the Motor Vehicle Financial Responsibility Law (MVFRL), which defines the insured's rights under the limited tort option. *See* 75 Pa.C.S § 1705(a). It states in pertinent part:

**§ 1705. Election of tort options**

**(a) Financial responsibility requirements.—**

\* \* \* \*

NOTICE TO NAMED INSUREDS

A. "Limited Tort" Option—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies. . . .

75 Pa.C.S. § 1705(a).

¶ 7 The rules of statutory construction inform our understanding of section 1705 and guide our analysis of whether this provision applies to pedestrians. *See* 1 Pa.C.S. §§ 1901–1939. Section 1921 emphasizes that the legislative intent of the statute must control any interpretation of a statute. *See* 1 Pa.C.S. § 1921. *See also Motorists Ins. Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559, 566 (1995) (stating that the object of all interpretation and construction of statutes is to ascertain

and effectuate the intention of the legislature). Section 1921 states in pertinent part:

**§ 1921. Legislative intent controls**

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921(a), (b).

¶ 8 The overriding intent of the legislature in enacting the MVFRL was to reduce the rising cost of purchasing motor vehicle insurance and deter people from failing to insure their vehicles. *See Kafando v. State Farm Mutual Auto. Ins. Co.*, 704 A.2d 675, 677 (Pa.Super.1998) (stating "[t]he MVFRL was designed to deter people from failing to insure their vehicles more forcefully than the prior statute."). *See also Motorists Ins. Companies*, 664 A.2d at 566 (determining that "[t]he intent of the General Assembly in enacting the MVFRL was to reduce the rising cost of purchasing motor vehicle insurance."). The application of a limited tort motor vehicle insurance policy to a pedestrian does not effectuate the policies underlying the MVFRL. In fact, the application of the limited tort option to pedestrians could deter individuals from electing the limited tort motor vehicle insurance and thereby undermine the MVFRL's effort to reduce the costs of motor vehicle insurance, since limited tort insurance enables insurance companies to limit their potential costs and thereby reduce consumer's insurance premiums.

¶ 9 Moreover, section 1903(a) states that the words and phrases of statutes "shall be construed according to their common and

approved usage." 1 Pa.C.S. § 1903(a). *See also McKelvey v. McKelvey,* 771 A.2d 63, 64 (Pa.Super.2001) (concluding that words of a statute must be construed according to their plain meaning). There is nothing in the language of section 1705 to suggest that a pedestrian's right to recover are implicated or limited by the election of a limited tort option in an automobile insurance policy. *See* 75 Pa.C.S. § 1705. Rather, the plain language of section 1705, as evidenced by 1705(a)(1), and 1705(b)(2), concerns only drivers and passengers of motor vehicles. *See* 75 Pa.C.S. § 1705. Section 1705(a)(1) states, that "the laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by *other drivers.*" 75 Pa.C.S. § 1705(a)(1) (emphasis added). Section 1705(b)(1) states, in pertinent part:

> where more than one private passenger motor vehicle policy is applicable to an insured and the policies have conflicting tort options, the insured is bound by the tort option of the policy associated with the private passenger motor vehicle *in which the insured is an occupant* at the time of the accident if he is an insured on that policy and bound by the full tort option otherwise"

75 Pa.C.S. § 1705(b)(1) (emphasis added). Taken together these subsections illustrate that the legislature intended section 1705's limited tort option to include drivers and passengers exclusively. Therefore, section 1705 should not be construed to suggest that the legislature also contemplated the inclusion of pedestrians within the purview of Section 1705.

¶ 10 Moreover, the language of the MVFRL does not notify insurance consumers that their election of the limited tort option will limit their ability to seek a recovery if they are injured as a pedestrian. If the legislature had so sought to limit a pedestrian's ability to seek a remedy it would have stated this expressly in the statute. In the absence of such statutory language, the MVFRL should be read to exclude limitations on a pedestrian's rights of recovery. *See Key Savings and Loan Ass'n v. Louis John, Inc.,* 379 Pa.Super. 226, 549 A.2d 988, 991 (1988) (determining that "[T]his Court is without authority to insert a word into a statutory provision where the legislature has failed to supply it.").

¶ 11 In this case, L.S. was neither a driver of a motor vehicle, occupant of a motor vehicle, nor a consumer of motor vehicle insurance. Thus, she is decidedly not a part of the population to whom this statute is directed and her rights of recovery as a pedestrian should not be defined by the statutory parameters of the MVFRL.

¶ 12 In *Andreyo v. Radle,* a trial court addressed the issue of whether a minor pedestrian is bound by the parent's election of limited tort coverage. *See* 121 Dauphin County 167, 59 Pa. D. & C.4th, 2002 WL 32003974 (Dauphin County 2002). While the *Andreyo* decision is not binding on this Court, its analysis of this issue is relevant to the current discussion. In *Andreyo,* the defendant, while driving his car, struck and injured the plaintiff, who was a fifteen-year old pedestrian. Thereafter, plaintiff filed a negligence complaint against the defendant. In his answer, defendant asserted that the MVFRL barred plaintiff's claim since plaintiff's father had elected the "limited tort option" in his automobile insurance policy and plaintiff was considered an "insured" under the policy. The trial court concluded that the statutory application of tort options applied exclusively to operators and passengers of vehicles and not to pedestrians.

*See id.* at 171. The court reasoned that the MVFRL was not intended to apply to "an insured" when the "insured" is a pedestrian, on some other non-automobile conveyance; or...sitting in his living room should an errant automobile come crashing through his door." *Id.* at 172. I agree with the *Andreyo* court's reasoning, and conclude, accordingly, that neither the words and language of section 1705, nor the legislative intent of the statute will permit a statutory interpretation that a pedestrian wholly unattached to a motor vehicle whether as owner, operator, passenger, or any other type of occupant, is contemplated to fall within the purview of section 1705.

¶ 13 Nowhere in the MVFRL has the legislature even made mention of a person in their capacity as a pedestrian. Section 1705, both in its original form and as amended, contains no reference to pedestrians in any capacity. I am unable to join in a statutory interpretation that would interfuse the rights of the innocent pedestrian into the matrix designed to reduce the rising cost of purchasing motor vehicle insurance. I perceive such a clear intent in the enactment and implementation of the MVFRL, I dare not extend the scope of its coverage where our legislators have not.

¶ 14 Accordingly, I concur in the Majority's determination that L.S. was not an occupant of the school bus and that the accident was a motor vehicle accident. However, I must most respectfully dissent from my learned colleagues' conclusion that L.S.'s rights to recovery are limited by section 1705.